## STATE *v.* JOHN W. POOL.

Whenever an act of the Legislature can be so construed and applied as to avoid conflict with the Constitution, and give it the force of law, such construction will be adopted by the court:

*Hence,* in section 153, chap. 32, of Battle's Revisal, which reads, "If any person shall wilfully fell any tree, or wilfully put any obstruction, except for the purpose of utilizing water as a motive power, in any branch, creek, or other natural passage for water, whereby the natural flow of water through such passage is lessened or retarded, or whereby the navigation of such course by any raft or flat may be impeded, delayed or prevented, the person so offending shall be guilty," &c , the disjunctive conjunction. *or,* in the latter portion thereof, between the words "retarded" and "whereby," should be read as *and*, thus making such section read, "If any person shall wilfully fell any tree," &c., "whereby the natural flow of the water," &c., "is retarded, *and* whereby the navigation of such course by any raft or flat may be impeded," &c.

Such a change of words is consistent with the rules of construction, and divests the said section of all constitutional objections, and it becomes consistent with law, reason and public policy.

(*State* v. *Glen,* 7 Jones 32; *Cornelius* v. *Glen,* Ibid, 512; *Parker* v. *Carrow,* 64 N. C. Rep. 563; *Pugh* v. *Wheeler,* 2 Dev. & Bat. 50; and ——— Ibid, 460, cited and approved.)

Justices READE and RODMAN *dissenting.*

INDICTMENT for obstructing a creek by the erection of a dam across the same, tried before his Honor, Judge *Watts,* at the Fall Term, 1875, of the Superior Court of JOHNSTON county.

The defendant was held to answer for a misdemeanor, under act of 1872–'73, Bat. Rev., chap. 32, sec. 154. On his trial in the court below, the jury returned a special verdict, finding certain facts, upon which the presiding Judge pronounced him guilty.

From this judgment, the defendant appealed.

The verdict of the jury and all other facts, necessary to an

understanding of the case, are fully stated in the opinion of the court.

No counsel in this court, for defendant.

*Pou*, for the prosecution, filed the following brief:

It is found by the verdict in this case, that the obstruction was placed in the stream *after* the passage of the act.

The prohibition to the owners of running streams, is not the taking of private property for public use; but is a proper general police regulation prescribing the mode or manner of using their property. "The government may, by general regulations, interdict such uses of property as would create nuisances, and become dangerous to the lives, or health, or peace, or comfort of the citizens." See 2 Kent's Com. (top) p. 415, (edition in this library.)

By the act under consideration, the Legislature wisely forbids the wanton obstruction of running streams, and regulates the use of them for fishing, leaving their utilization for motive power free, but subject to the common law of nuisance. For Act, see Bat. Rev., p. 323, secs. 154, 155.

Whether the Legislature used its powers wisely or otherwise, the court will not consider.

*Attorney General Hargrove*, for the State, cited and relied on the following authorities: *State* v. *Glenn*, 7 Jones, 321; *Cornelius* v. *Glenn*, Ibid, 512; and *Pugh* v. *Wheeler*, 2 Dev. & Bat., 50.

BYNUM, J. The defendant is indicted for constructing a a dam across Swift Creek, in the county of Johnston, whereby the natural flow of the water through the same is retarded and lessened, the said dam and obstruction not being for the purpose of utilizing the water as a motive power;

The jury found the following facts as a special verdict:

1. That the bed of the creek at the point named, and the waters of the creek, and the land upon each side of the stream

were duly granted by the State in 1749 to one Nathaniel Giles, and that from him the title has regularly descended to the defendant.

2. That the said creek is not navigable, and has never been so declared by the Legislature.

3. That the dam was built within two years prior to the finding of the indictment, and that by reason of its construction the natural flow of the water is retarded.

4. That the stream is forty-five feet wide at the point where the dam and trap are erected.

Upon these facts found by the jury, the court below, as a matter of law, declared that the defendant is guilty.

The indictment is founded upon an act incorporated in Battle's Revisal, chap. 32, section 154, which was enacted in 1872–'73, and is as follows : "If any person shall wilfully fell any tree, or wilfully put any obstruction, except for the purpose of utilizing water as a motive power, in any branch, creek or other natural passage for water, whereby the natural flow of water through such passage is lessened or retarded, or whereby the navigation of such course by any raft or flat may be impeded, delayed or prevented, the person so offending shall be guilty of a misdemeanor, and on conviction shall be fined not exceeding fifty dollars, or imprisoned not exceeding thirty days."

It will be observed that the indictment charges the offence to be in "retarding the natural flow of the water through Swift Creek" by the obstruction of the dam, and therefore no question arises under section 155, which relates to fish dams. The construction of section 154 then will determine the case.

The prosecution insisted that by the use of the disjunctive conjunction, " or," in the section just cited, every wilful obstruction of a creek or branch, in any part of the State, which may retard the national flow of the water, is indictable. And so it is, with that construction. But it cannot be supposed

that an intelligent Legislature, meant, that every obstruction of a stream, no matter how insignificant, private, or removed from public access or use, shall be indictable and subject the offender to fine and imprisonment. The statute has no degrees, and but the single exception, to-wit: where the water 's utilized as a motive power. So that it is equally a crime to build a dam, to wash the extensive gold deposits and other minerals of the State, or to pond water to save ice for domestic or commercial use. A man may not construct a pond for raising fish, but he may, to run an illicit distillery, for that 's utilizing water as a "motive power." Many of the streams, in the western part of the State, are hardly accessible to man, are remote from habitations, and of such rapid fall, that no obstruction can create a nuisance or affect the public. In that region, dams are often built and the water diverted to dwellings and lots for domestic uses, and sometimes for the irrigation of meadows and gardens. In many portions of the mountain district, large volumes of water are thus conducted from dams, for many miles, in canals and trunks, to the surface mines, where the water is used for working away the dirt, preparatory to collecting the gold or other metals.

Certainly the act does not intend to make such obstructions and the like, unlawful, and if it does, the least that can be said of it, is, that it is of questionable constitutionality, apart from its impolicy. *State* v. *Glenn*, 7 Jones 321.

Whenever an act of the Legislature can be so construed and applied, as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts. Cooley 185 ; *Newland* v. *Marsh*, 19 Ill. 384. This can be done, in our case, consistently with the rules of construction, by reading the word "or" as "and," which was most probably intended by the draftsman. The section will then read: "If any person shall wilfully fell any tree, &c., whereby the natural flow of the water, &c., is retarded, *and*

whereby the navigation of such course by any raft or flat, may be impeded," &c.

Such a change of " or" into "and," is often resorted to in order to effect the intent of the parties, and prevent the entire avoidance of the instrument. *Parker* v. *Carrow*, 64 N. C. Rep., 563, and similar constructions, are allowed and encouraged by our statutes. Bat. Rev., chap. 108. This construction divests the act of all constitutional objections, and it becomes consistent with law, reason and public policy. To the extent that the streams and waters of the State, are used for navigation, or are fairly capable of such use, even for " rafts and flats," they fall under the control of the State, so far that the private citizen, though the owner of the land and the bed of the stream, may not exclude the public from their navigation, when the State forbids it. Such only is the declared purpose of section 154; and it remains to be seen whether the special verdict, finds facts which bring the defendant under the penalties of the act. It is found that the bed of the creek, and the lands upon both sides of it, belong to the defendant, by the grant of the State; and that the creek is not navigable, and has never been so declared by the Legislature. These findings would seem to end the case; for if the creek is not navigable, the alleged obstruction cannot "impede, delay or prevent" the navigation, and so there is no violation of the statute. If the indictment is framed upon the idea that the obstruction is a public nuisance, no facts are found which constitute it such. It is not found that the public health is affected thereby, or that the lands of others are injured, or that it either occasions, or is calculated to occasion, any public or private inconvenience or deprivation of right. The owner is allowed by the act, to construct a dam of any height, upon the spot where this one is erected, provided he uses the water as a motive power to drive machinery, although he thereby retards the flow of the water, impedes navigation and stops the passage of fish. Such retardation is no public nuisance.

How the same act, for a different purpose, though with the same physical results, can be a nuisance to the public, is, by no means clear.

By the finding of the jury, the creek at the dam, was unnavigable for any purpose, and was strictly private property. The only right possessed by others, was to the use of the running water, above and below the lands of the defendant, *ad potandum et lavandum.* The verdict establishes that no such right of others was disturbed.

Take the case in the strongest possible aspect for the State: Suppose the Legislature had enacted that Swift Creek should be considered to be a public highway and a navigable stream. If, in *fact*, it was neither, the Legislature cannot *by a simple declaration*, make it so. Because if it is private property, the Legislature cannot appropriate it to public use without compensation. Cooley, Const. Lim., 590 ; *Morgan* v. *King*, 33 Pa. Stat., 301. If the use or enjoyment of a thing, not in itself immoral, or injurious to others or their rights, is prohibited, it is unconstitutional, and opposed to the genius and spirit of our institutions.

In the *State* v. *Glen*, 7 Jones, 321, after an exhaustive examination of the question and the authorities, this court announced as the law of North Carolina, in relation to the water courses of the State, three resolutions, embracing the three classes of streams into which the subject is divided. The third resolution only, applies to this case, and is thus stated :

3. "All the rivulets, brooks and other streams, which, from any cause, cannot be used for intercommunication by inland navigation, are entirely the subjects of private ownership, are generally included in the grants of the soil, and the owners may make what use of them they think proper, whether it be for fishing, milling or other lawful trade or business. The only restriction upon this right of ownership arises, *ex necessitate*, from the nature of running water; and it is, that the owner shall so use the water as not to interfere with the simi-

lar rights of other proprietors, above or below him, on the same stream. *Pugh* v. *Wheeler*, 2 Dev. & Bat., 50. Rights acquired in streams of this class, by grants from the State, for the bed of the stream, cannot be taken from the owners by the Government, except in the exercise of the power of eminent domain, and then only for public use, with a provision for just compensation. 2 Dev. & Bat., 460."

In the subsequent case of *Cornelius* v. *Glen*, 7 Jones, 512, it was that the Yadkin river, not being a navigable stream, a grant from the State of the bed of the river, passes it as does any other grant of land, and the Legislature has no power to take it away, either for public or private uses, without making compensation to the owner. And in that case, attention is called to a distinction, the non observance of which has led to some confusion; that is the distinction between the *absolute* ownership which is acquired to the bed of the river, when it has been actually granted and paid for, and the *limited* ownership, which is acquired where a grant calls for " a corner on the bank of a river, and then with the meanders of the river to another corner," &c.; in which case, although by implication of law, the grant extends to the middle of the river, and confers ownership for certain purposes, as appurtenant to the land granted, yet as it has not been actually granted and paid for, certain rights, by like implication, are still in the State.

The court then observes that " this will seem to account for the many acts of the Legislature, that have been passed in former years, in regard to the passage of fish, extending at first down to small streams, such as Haw river, Deep river, Uharrie, South Yadkin and the like; which was well enough until the beds of these streams were entered and grants taken out; after which those streams were left out of the fish acts," and parties were content with the rights of riparian ownership, the privilege of going to the middle of the stream, as contra-distinguished from the ownership of those where grants actually cover the bed of the stream. PEARSON, C. J., in de-

livering the opinion of the court, thus sums up the law: "Not being navigable, the defendant, by virtue of the grant to Phillips, is the owner of the bed of the river, and the Legislature had no more power to impair his right of ownership, either for public or private purposes, without making compensation, than it had to take away any other piece of land, which he had bought and paid for, and for which the State had been paid." See also *Pugh* v. *Wheeler*, 2 Dev. & Bat., 50. Whether the State can enforce against the owner of the land and bed of an unnavigable creek, an act of the Legislature forbidding its obstruction to the passage of fish, is a question not raised upon this indictment and verdict, and need not be discussed. The point upon which the decision rests is, that where the indictment is for a public nuisance in obstructing the flow of water in an unnavigable stream, and the special verdict of the jury negatives the idea of a nuisance, or any injury or circonvenience, public or private, the defendant cannot be declared guilty.

There is error. Judgment reversed.

Per Curiam. *Venire de novo.*