## Owens v. The State.

### *Indictment for Destroying Public Bridge.*

1. *Destroying public bridge; what indictment for, need not allege.* — An indictment, under section 3737 of the Revised Code, charging the wilful destruction or injury, otherwise than by burning, of a designated public bridge erected by authority of law on a specified road, is not demurrable because the ownership and value are not alleged.

2. *Public bridge; what will not authorize destruction of, by private person.* — The worthless and decayed condition of a public bridge, erected by authority of law, or the peril attending its crossing, will not authorize its destruction or injury by one not suffering particular annoyance or injury.

3. *Same.* — If a public bridge, in its original construction and condition, materially impedes the free navigation on a stream which is a public highway, that fact may be shown in defence by a person who destroys the bridge to allow passage for his raft.

4. *Reasonable doubt; what charge as to erroneous.* — The doubt which requires an acquittal must be an actual, substantial doubt generated from a careful weighing of the evidence, and not a mere possibility or speculation. Charges which are so general as to authorize an acquittal upon mere possibility or speculative doubt are properly refused.

5. *General exception to entire charge; when not available.* — A mere general exception to an entire general charge, enunciating several distinct propositions of law, cannot be supported unless the charge as a whole is erroneous.

[Owens v. State.]

APPEAL from Crenshaw Circuit Court.

Tried before Hon. JOHN K. HENRY.

The indictment in this case charged that before the finding thereof, "Thaddeus Owens wilfully injured or destroyed, otherwise than by burning, a public bridge in said county, known and commonly called the Long Bridge; said bridge being erected by authority of law on a road leading from Greenville to Andalusia, commonly called the 'Long Bridge Road,' against the peace," &c.

A demurrer, on the ground that no offence was charged, and that the indictment was defective, because it failed to allege the ownership or value of the bridge, was overruled.

The evidence adduced on the trial showed that the defendant destroyed the bridge, as he said, to enable him to get his raft through. The bridge when destroyed had been built about seven years, and was erected by the commissioners' court of Crenshaw county over "Patsaliga River," where the public road from Greenville to Andalusia crosses the river in that county. The "river" was only used for rafting timber down stream, and this had been begun since the year 1872. Some testimony was introduced showing that the bridge was in a dangerous condition for travel, and that it been "greatly disfigured, by some portions being sunk down," at the time it was destroyed. Other witnesses, however, testified that persons were in the habit of driving cotton wagons over it; that it was perfectly firm, the defect in it being that the bridge " was sunk down some." The river, where it is crossed by the bridge, was about seventy-five feet wide. The principal witness for the State thus described the bridge: " There were three or four arches in the water.. Nearest the centre of the river the arches were about twenty or twenty-five feet apart. The bridge was in good condition, only leaning." There was some testimony tending to show that rafts the size of appellant's could float through, and still leave three feet to spare between the arches.

The court gave a general charge to the jury. It asserted in substance that if the bridge was such an one as described in the indictment, and although some of the arches might be in the water, yet if they were no obstruction to the ordinary navigation down the stream, and defendant could have passed his raft without danger, then he had no right to cut down the bridge; that although the bridge might be worthless, yet if it was a public bridge erected by authority of law, the defendant had no right to cut it down, if it did not obstruct the ordinary navigation. "To which charge," the bill of exceptions recites, the defendant excepted.

The defendant then requested fifteen written charges, some of which were given and others refused.

The various charges refused asserted 1st: If the bridge was worthless the jury must acquit. 2d. If it was in such a state as to render travel over it unsafe or dangerous there could be no conviction. 3d. That if any of the arches were in the bed of the river defendant could not be convicted for cutting them away. 4th. That the State must prove every material allegation, and if there was " any doubt " as to such allegation there could not be a conviction. 5th. If the bridge was of no value the jury must acquit; also in case it was a nuisance. 6th. That defendant is entitled to any and all doubt of his guilt. Exception was reserved to the refusal to give the charges requested; and these rulings, together with the charge given and the refusal to sustain the demurrer, are now assigned as error.

JOHN D. GARDNER, for appellant.

JOHN W. A. SANFORD, Attorney General, *contra,*

BRICKELL, C. J. — The indictment charges a violation of the statute (R. C. § 3737), by the destruction, otherwise than by burning, of a public bridge, erected on a, public road, by authority of law. It pursues the words of the statute, and fully defines and describes the offence imputed to the defendant. An allegation of the value of the bridge destroyed was not necessary. The value does not enter into the offence, or its punishment. Nor was an averment of ownership necessary. The offence was sufficiently identified and made specific in the allegation that the bridge was a public bridge, erected by authority of law, over a public road. The ownership, as matter of law, resides in the State, and a specific averment of ownership would have been a mere allegation of the legal deduction from the facts stated in the indictment.

The court, as it was in duty bound, gave a general charge, asserting the propositions of law the indictment and the evidence were supposed to involve. No specific objection was made to this charge, nor the attention of the court or the prosecuting officer drawn to any particular parts of it, as erroneous. It does not invade the province of the jury, nor can it be asserted all the legal propositions are incorrect, if any of them are. A general exception was taken to it, and it could as well be presumed the exception is taken because the court gave a general charge, a charge not requested, as because the charge contained the particular propositions now assailed. No such general exception can be allowed; it is not in consonance with the letter or spirit of the statute, which authorizes the reservation of exceptions. The right to reserve an exception, and incorporate it and the matter to which it refers into the record,

[Owens v. State.]

is statutory. It did not exist at common law, and became a matter of legislation only to subserve and promote the ends of justice and right.

The statute specially defines the office of a bill of exceptions. It is the reservation " of any charge, opinion, or decision of the court, touching the cause of action, and which would not otherwise appear of record." R. C. § 2754. The statute further provides, the " point, charge, opinion, or decision wherein the court is supposed to err, with such a statement of the facts as is necessary to make it intelligible," must be contained in the bill of exceptions. R. C. § 2755. The courts, since the introduction of bills of exception, have invariably required the party in his exception clearly and distinctly to point out the matter in which the court is alleged to err. As is usually said, he must lay his finger on the error. Sheer justice to the court, and to his adversary, requires this clearness and distinctness in the reservation of an exception. It is not to be presumed that a party will except to the action of the court, merely because he has the right of exception. The exception is reserved because of a particular ruling, charge, or decision, prejudicial to him. This ruling, charge, or decision, it is but fair and just to require that he should by his exception clearly and distinctly point out. He must not speculate on the discovery subsequently of some error, not then appearing to him. If there is then error apparent to him, he should by his exception point it out, for the court may have fallen into it by inadvertence, and could at once cure it. If distinctly pointed out, his adversary may, on having his attention drawn to it, prefer to waive the decision on that point in his favor, rather than incur the hazards of a reversal, or the delay and expense incident to an appeal or writ of error. It is not to be permitted a party, by the generality of an exception, to deprive the court of the opportunity of correcting its own errors, or his adversary of waiving the ruling. No prejudice can result to him if the court corrects the error, or his adversary waives the erroneous ruling. It should therefore not be cause of revision, unless it is apparent that it was deliberate on the part of the court, made against the party's exception, and accepted by his adversary. Where the court gives, as it is in duty bound, a general charge to the jury, no general exception, not distinguishing and specifying the parts of the charge supposed to be erroneous, will be supported, unless the charge as a whole is erroneous. This cannot be, and has not been asserted, of the charge given in this cause. It certainly states several correct propositions of law, which grow out of the evidence in the record. Can this court narrow the exception to other parts, which may or may not be erroneous ? Can it keep the exception in abeyance

until, after a critical analysis of the charge, it finds somewhere a lurking error, and then visit it on that error ? Shall it do for the exceptant that which he would not do for himself, — limit his exception to such error ? If a party interposes a general objection to evidence, which is partly admissible and partly inadmissible, the objection may be overruled, gross though may be the inadmissibility of a part. The reason is not only that he cannot devolve on the court the duty and labor of analyzing the evidence, and separating the legal from the illegal. It rests upon a better reason, that a party knows his rights, and must ask them, and is not permitted to speculate on the chance of obtaining more than he is entitled to by asking it. In other words, he has something to lose as well as gain, by the practice he adopts. If he asks more than he has a right to demand, he cannot complain that his request is denied. It was preferred, and is refused as an entirety. We decline to enter on an examination of the exception to the general charge of the court, for we cannot assert it is in all its parts erroneous.

Various charges were asked by the appellant ; some were refused and some were given. The charges refused may be classed under these two general propositions : if the bridge was worthless and impassable, the defendant could with impunity destroy it ; or, if the jury had *any* doubt of the defendant's guilt, — whether reasonable or unreasonable ; whether a mere speculation, a mere possibility ; whether generated by the evidence before them, or springing from the inherent uncertainty attending all human testimony, — they should acquit. The value of the bridge, its worthlessness, or capacity of serving the purposes for which it was erected, was not the subject of inquiry before the jury. If the bridge, because of its want of repair, had worked any particular injury or annoyance to the defendant, a different question would be presented. That, however, was not the question. The only inconvenience or annoyance he is supposed to have suffered would have resulted if the bridge had been in complete repair, and a safe passway for all citizens. That injury or inconvenience resulted not from the condition of the bridge, but from its original construction. If in its original construction, and its condition, it impeded the free navigation of the stream it spanned, that was a fact he could have submitted to the jury. Independent of this fact, he could not claim immunity from punishment, or a right to destroy the bridge, because of its decayed or dangerous condition, which worked him no injury. Its removal or destruction, because of the peril attending its crossing, was committed to a proper jurisdiction. The doubt which requires an acquittal in a criminal case is actual and substantial. It is not any doubt, for some minds indulge doubts on every question which may

be suggested, and on which they must act. It is not mere possibility or speculation, for these the imagination creates. It is the doubt the evidence generates; when the jury, carefully weighing all the evidence, cannot say they feel an abiding conviction of the defendant's guilt. This is the most frequent definition of a reasonable doubt, and is perhaps as accurate as any which could be given. *Mose* v. *State*, 36 Ala. 211. The charges refused would have authorized the jury to suppose that any possible or speculative doubt required them to acquit.

There is no error in the record, and the judgment must be affirmed.