URIAH BOWDEN, ET AL., APPELLANTS, VS. CHARLES S. ADAMS, APPELLEE.

Where a part of a street designated on a recorded plat of lots and streets, not within any incorporated city or town, is claimed to be a public highway, and for upwards of thirteen years such part of the street has been enclosed and improved and occupied openly and continuously as a portion of private premises, and during such period it has not been used as a highway, and it is claimed adversely by the occupier, the County Commissioners have no power under the statutes to remove the fences or other obstructions as a public nuisance.　The proper remedy in behalf of the public assuming the street to be a public highway, is by indictment.

Appeal from the Circuit Court for Duval county.

The appellee alleges in his bill that he is the only child and heir at law of John S. Adams, deceased, who died in the year 1876, seised and possessed, and in the actual possession of land described as his homestead and situate in Duval county.　The land is alleged not to be in an incorporated city or town, and is described practically as fol-

lows: Commencing at the intersection of the eastern boundary of McCoy's street and McCoy's creek and running thence in a southeasterly direction along said street to the western corner of land occupied by one Hatsel P. Green, and thence in a northwesterly direction, along the fence on the northwestern side of Green's land to the western boundary of what is known as the Townsend land, and thence in a southerly and then easterly direction around the western and south boundaries of the Townsend land to the Fairbanks land, and thence north along the line between the Townsend and Fairbanks lands to McCoy's Creek, and thence up the creek to the place of beginning. The bill excepts from this description a piece of land in the northwestern corner bounded by the said creek and McCoy's street and occupied by one Bush. This description of land claimed by the complainant, it will be seen, includes the Townsend land, whose acute angle commences on McCoy's creek, and runs southward. The bill further alleges that John S. Adams had been so seised and possessed in the year 1871, when he enclosed the land and improved it as a part of his homestead and planted orange trees therein which are growing and bearing fruit, and kept the same enclosed continuously up to the time of his death and openly claimed the same and asserted exclusive ownership, possession and claim thereof, and that, upon the death of John S., the exclusive ownership and possession was continued by complainant and now remains in him as sole heir at law of John S., and the possession by him and his father has been peaceable, open, notorious and adverse continuously since 1871. That the defendants, under the false pretense that a county highway, or street, or right of way exists upon the premises, have threatened and are about to enter upon them and remove the fence enclosing

the same, and dig up and remove the orange trees to complainant's irreparable damage. It is alleged that no such highway, &c., exists, or at any time heretofore existed, and that neither the public, nor any one else, have or heretofore had at any time any such right of way; and that neither the premises, nor any part thereof, have ever been opened or used by the public as a highway or street, or been granted to the public for the uses of a highway by any former proprietor, and such grant or dedication consummated by the assent thereto express or implied on the part of the public authorities; nor has such pretended highway or street been at any time laid out or worked or sign boards or guide posts put thereon, nor has any responsibility to open, work or use the same been assumed by the public authorities, An injunction is prayed. Helen M. Adams swears to the bill, stating that the complainant is absent from the State, that she is complainant's aunt, and the sister of John S., and was a member of his family at his death residing with him on the homestead, and had been long prior thereto, and that she has read the bill and that the statements thereof "are true in substance and in fact." An injunction issued.

The defendants answered the bill, stating that they do not know when John S. Adams died, or whether complainant is his only child and heir at law, but that John S. did not die seised and possessed of all the land described in the bill; admitting that the land is not in an incorporated city or town, but stating that they have no knowledge, information or belief as to when John S. took actual possession of all the land and enclosed the same, but admitting that he or his legal representatives did take possession of all of it and enclosed the same and set out orange trees. They further allege that in 1847 one Winter became seised in fee of a body of land lying south of McCoy's Creek and

bounded on the south by the south line of what is now known as Commercial street, and including all the lands above mentioned and referred to, as well as others. That in 1852 Winter conveyed to Samuel Fairbanks the said Fairbanks lands. That in 1845 Winter conveyed to one Roberts a lot 105 feet square lying on and bounded on the north by the creek, and on the east by a street 35 feet wide between it and the Townsend land, and bounded otherwise by Winter's land. That after these sales Winter died, and in 1858, under proceedings in the Probate Court, the residue of his purchase was sold to one Bowden, who in 1866 sold and conveyed the same in fee to Miles Price. Record of all the aforesaid deeds is alleged.

That in 1866 Price divided said land into blocks and lots with streets between, and named and opened the streets, and made a map and plat thereof showing the blocks and streets and had the same recorded in the county records, a copy of a part of which plat is annexed to the answer.

Of the Townsend lot the answer says that Townsend went into possession during the life of Winter, but no deed was made to him by Winter, nor until after Price had purchased, when Price made him a deed expressly reserving in it the land in said lot covered by Winter street. The plat shows that Winter street, running easterly and westerly north of the fence or the Green land, cuts through the Townsend lot to the Fairbanks western boundary, leaving part of the Townsend lot north and part south of the street. The answer further states that John S. Adams acquired the Townsend lot through mesne conveyances from Townsend; and that Green acquired his land, mentioned above, through mesne conveyances from one O'Hearn, to whom Price conveyed January 4, 1867, by a deed, duly recorded, which expressly refers to said map, and bounds the land so conveyed on the west by McCoy's street and on the north by

the *south* line of Winter street. That in February, 1870, Price conveyed the land lying north of Winter street to one Roberts, and the deed expressly refers to the map and bounds the land conveyed by the *north* line ot Winter street.

The fee of the land covered by Winter street as laid off by Price is alleged to be and have been in Price since 1866, and Price is alleged to have dedicated the land included therein to the public as a public street or road by his acts and doings aforesaid. That a large number of persons, citizens of Duval county, have purchased lots in the tract of land so laid off by Price, and their deeds refer to said map or plat, and they used said street and still use so much thereof as is not obstructed as a public highway.

That neither the Townsend lot, nor the 105 feet square lot, nor any portion of them, is included in the boundaries of Winter street.

That the defendant, Bowden, is the sheriff of Duval county, and the other defendants, L'Engle and Starratt, are members of the Board of County Commissioners of said county, and constitute the committee of such board on roads and highways. That the eastern part of Winter street has been closed without lawful authority, and that the sheriff was, under the directions of the other said defendants, and in compliance with an order of such Board made January 6, 1885, proceeding to re-open said Winter street as the same had been previously opened and laid oft by Price, but they have no desire or intention to open any other road or street.

There was a motion to dissolve the injunction, upon which motion the complainant read an affidavit of Mrs. Fairbanks stating she is the widow of Samuel Fairbanks, late of said county, who died Sept., 1881. That Samuel resided with her before the survey claimed to have been made of what is now called Brooklyn, and continuously to

the date of his death in Brooklyn, on what is now known as Commercial street, near what is now called McCoy's street, and owned lands touching on Commercial street on the south, and extending north to McCoy's Creek, bordering on the west the land now occupied by one Green and the land occupied by the complainant; that the residence now on the tract occupied by Green was erected by J. S. A. in 1869; that J. S. Adams continued to live in this residence up to his death in 1876; that only in the last five years has said Green taken possession of the tract so occupied by him; that deponent having occasions before the said claimed survey, and continuously up to and after J. S. A. took possession as hereinafter mentioned, frequently went near enough to see the land upon which the street is sought to be extended by respondents; that J. S. A., in 1871, or previous thereto, erected a substantial enclosure around the land described in the bill of complaint, including said land over which said street is sought to be extended, together with that parcel of land upon which he erected a residence now occupied by Green; that said enclosure has been continually kept up by J. S. A., and his successors, to the present time; that in 1871 or previously thereto said Adams cultivated said premises, and planted vegetables and set out orange trees thereon, including said land over which the street is sought to be extended, which trees have been ever since and are now growing thereon. That neither before said pretended survey, nor since, nor before said enclosure by J. S. A. in 1871, nor since, has said pretended street been opened to the public or used by the said public as a street road or highway. That deponent *is informed and believes* that in the plat on record of Brooklyn, of which respondents claim the exhibit annexed to their answer, is a true copy. Winter street is extended to McCoy's Creek not only over and upon complainant's land but over land

belonging to deponent's husband, which respondents admit in their answer belonged to Samuel Fairbanks and never to Miles Price.

That Fairbanks never created or opened, nor was there ever created or opened a right of way over his land, nor did the public in any way ever use the same or any part thereof as a road, street or highway.

The defendant read an affidavit of Miles Price, stating that in April, 1866, he became the owner by purchase from Bowden of all the land sold by Ross to Winter, (except that sold by Winter to Fairbanks and the 105 feet lot sold by Winter to Roberts.) That he entered into possession and divided the tract into blocks with streets between them and opened said streets and dedicated them to the public as a public highway, and sold many parcels of said land to different persons referring in the deeds to said map or plan which is spread upon the records of Duval county. That one of the streets so opened by him was and is known as Winter street. That the said Winter street so laid off by him did not cross any land not included in his purchase, and did not touch any land sold by Winter in his life time. That he has never sold or conveyed the land covered by said street to any one. That said street has been used by his grantees as a public highway. That said Winter street, except so much as has been enclosed without authority, is still used by the citizens of Duval county as a public highway.

The Circuit Judge refused to dissolve the injunction.

On July 6, 1885, (a rule day,) the clerk entered a decree *pro confesso.*

On September 5, 1885, defendants appealed from the orders of June 23, 1885.

*Hartridge & Young* for Appellants.

The act approved February 10th, 1832, the 67th section of which is relied upon by appellees, is entitled "An act relating to crimes and misdemeanors," and was intended for the sole purpose of defining the class of highways which it should be an indictable offence to obstruct. The act does not and never was intended to deprive the public of the right to acquire an easement in any manner allowed by the common law. But the section itself uses the words: "Any road made by authority of * * any law of this State." Now the common law is as much a law of this State, where not in conflict with a statute, as an act of the Legislature.

The act of February 19th, 1874, sec. 1, chap. 2007, (McClellan's Digest, page 898) declares that all roads and highways that have been laid out according to law, or that may be hereafter laid out according to law are public roads. It will be observed that the Legislature does not say in accordance with an act of Congress or a statute of this State, but uses the broader term which includes the common law.

The laying off of the tract of land into streets by the proprietor and putting the plat on the public records and selling lots as fronting on or bounded by the space so laid off as streets, is a dedication to the public. Harding vs. Jackson, 14 Cal., 642.

The use of such land as a street passes as appurtenant to each lot sold and vests in the grantee, in common with the public, the right of way over the same. Kittle vs. Phipper, 22 Cal., 484.

If the public have a right of way over the street then it is a public highway and does not require the action of the Legislature, Congress or the County Commissioners to make it such. Roads leading from the residences or farms of individuals to the main road, called "private roads," are of

public concern and under the control of the government and are open to any one who may have occasion to use them and are therefore public roads.  Sherman vs. Bruick, 32 Cal., 241.

A dedication of land to public use as a street or highway may be made by deed or other overt act.  Dedication is a conclusion of fact and the intention to dedicate may be manifested with or without writing, by any overt act of the owner, as throwing it open to public travel, platting it and selling lots bounded by streets designated on the plat. Harding vs. Jasper, 14 Cal., 642 ; Cincinnati vs. White, 6 Peters, 431.

It will make no difference that the street in question is a mere *cul de sac*.  People vs. Kingman, 24 N. Y., 559 ; Bartlett vs. Bangor, 67 Me., 465, cited in note to American Reports, Vol. 29, page 53.

The ancestor of complainant and those claiming in privity with him, by accepting deeds referring to the plat and recognizing Winter street, are estopped from denying the existence of the right to the street.   Watson vs. Bioren, 7 Am. Dec.

The street was legally opened, the rights of the public attached by reason of the facts set out in the answer, and the County Commissioners are the public officials vested by law with the duty of protecting the rights of the public in highways outside of incorporated cities and towns.

Does the Statute of Limitations bar the right of the public ?  Does it bar the right of the County Board, as the representatives of the public, from re-opening a public highway which has been fenced in for more than seven years ?

It is a well settled principle that the statute does not run against the State.   Lindsay vs. Miller, 6 Peters, 666.

The principle is applicable to all governments and is es-

sential to the preservation of the interests of the public. Gibson vs. Chouteau, 13 Wallace, 92.

Counties are not corporations, and a plainly marked distinction is made and should be observed between municipal corporations and counties. Addison on Torts, (Dudley & Bailey's Edition) Vol. 2d, page 1298.

Counties are mere political subdivisions of the State with specific powers acting through their officers as agents who are appointed in the exercise of a part of the sovereign power of the State by the requirements of a public law. They are merely convenient modes by which the State governs the people. Scales vs. Chattahoochee Co., 41 Ga., 225 ; Sherbourne vs. Yuba Co., 21 Cal., 113 ; Asknew vs. Hale County, 54 Ala., 639.

The reasoning of the Supreme Court of the United States in Gibson vs. Chouteau, cited above, applies with as much force to counties as to any government.

The real defendant in this case is the county of Duval and the nominal defendants are public officers acting in pursuance of an order of the County Board.

To entitle the owner of land over which a public highway passes to enclose the same, its non-user must be long enough to acquire a right by prescription, and the enclosure of the highway by the owner for a less period does not entitle him to retain possession. State vs. Culver, 65 Mo., 607 ; 27 Am. Reports, 295.

When the owner of the land platted the same and put his plat on the public records, sold lots to divers persons referring to said plat, opened the street and expressly referred to the street in question in the deeds under which complainant derives his title, the right of the public to use it as a highway became vested.

" When the public have acquired a right of highway in a road or street in this or any other manner, non-user of

their right for the period of twenty years would be necessary to raise a presumption of abandonment by the public of the right." State vs. Culver, 65 Mo., 607.

It follows that the answer was sufficient, that the court below erred in sustaining the exceptions thereto, and that the motion to dissolve the injunction should have been granted.

*A. W. Cockrell & Son* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court:

The question upon which a disposition of this cause is dependent is the authority of the County Commissioners, upon whose order the appellants assume to act.

The statutory provisions in this State during the period covered by the record, provided (Act of 1845, Thompson's Digest, 139,) that all the roads in the several counties that have been laid out according to law shall be, and they are declared to be public roads. The act named authorized the County Commissioners to order, on application, the laying out of any public roads throughout the county, when the same shall be deemed necessary, and to discontinue such as should be found useless, burdensome or inconvenient, and to alter roads as occasion should require. In 1874, a revision was enacted under the title of "An act to establish and keep in good repair the public roads and highways in this State." It provides that all the roads and highways in the several counties in this State that have been laid out according to law shall be and they are declared to be public roads. It gives the County Commissioners power and authority *on application of the citizens* of their respective counties to order the laying out of any road or roads throughout their county, when the same shall be necessary

for the convenience of citizens or the traveling public, and also power to discontinue roads or highways on application, and to alter and change roads. Each act also provides the manner of marking out a neighborhood or settlement road, and that it shall be done upon a petition presented to the board and " signed by twelve or more householders, inhabitants of the county, praying for the establishment of the road from a certain place therein specified," and " if the signers to the said petition shall be residents in the neighborhood of the road prayed for," and if the " petition shall appear reasonable," commissioners will be appointed to lay out the road. Whenever proceedings *ad quod damnum* are taken in laying out a neighborhood or settlement road the damages are to be paid by the person or persons applying for the same, but if it be a public road they are payable out of the county treasury. Each act makes it the duty of the County Commissioners to lay out the *roads* in their several counties each year into road districts, and to appoint in each road district commissioners of roads and bridges, whose duty it is to lay off the roads in their respective districts into road divisions, and apportion the hands liable to work on the roads, and appoint an overseer or supervisor of each road division, and furnish him with a list of hands liable to work on his road. The act of 1845 provided that any road commissioner or overseer refusing or neglecting to perform his duty should forfeit a sum prescribed by it, and that persons liable to work roads should be fined when they make default therein. It also provided that the road commissioners should be liable to the County Commissioners for keeping in good order the several public roads in their district, and subjected them to fine for not attending to their duty, and that overseers should be liable and fined for like default in their duties. The act of 1874, (both of itself and including

the amendment of 1883) likewise imposes a penalty upon road commissioners and supervisors for not performing their duties, and it punishes defaulting "road workers." The amendatory act of 1883 makes it the duty of County Commissioners to levy a road tax of from a half mill to a mill to be applied to working and keeping in good repair the public roads and highways and for the erection of mile and guide posts, which both the original acts provide shall be put up at the expense of the county. The act of February 10, 1832, (sections 7 and 8, page 428, McClellan's Digest,) provide that a public road or established highway shall be construed to be any road made by authority of an act of Congress, any law of this State, or the road commissioners of the counties of this State; and makes obstructing any public road or established highway an offence, punishable by fine, and enacts that the judgment upon conviction shall also be that the obstruction be removed. The general subject of this act is indicated by its title, which is: "An act relating to crimes and misdemeanors." The act of 1872 (Chapter 1882) defining the duties and fixing the pay of County Commissioners gives them power "to alter, lay out, establish, maintain, vacate or discontinue any road or highway in their respective counties," and "to build and keep in repair county roads and bridges."

In the case of Bradford vs. Cole, 8 Florida, 264, Cole presented a petition to the County Commissioners of Leon county alleging that there had been on the proposed route a road of ingress and egress running through Dr. Edward Bradford's land for the last *fifteen or twenty years*, and that it is the nearest road of the petitioner to Tallahassee, and to that portion of the neighborhood in which his practice lays, and would inconvenience persons sending for him in his professional business as a physician and compel them to go some five miles further; and he prayed the Commission-

ers to give it consideration, and report whether or not the said Bradford would be damaged more by the road being opened or the community by its being closed ; Cole signed it and some twenty-one others, residents of the neighborhood, joined in the petition. The Commissioners appointed three persons to view and mark out said road and report to the board as the law directs, and they reported that they had marked out a road giving its course and distance, and also stating their belief that the road is necessary and should be established, and that it would be of great convenience to the inhabitants ; and further " that it has been a neighborhood road for a great many years." The County Commissioners after hearing testimony and argument of counsel adopted this report, and declared the road " a public neighborhood road." It was held by the court, who disclaimed any purpose of extending to proceedings of this kind technical rules, or of requiring more than substantial compliance with the law, that the proceedings were fatally defective ; and that the fact that the road was an old one could have no weight in the consideration of the case, " for if the party has rights through this there is no need of his application, and his remedy is by indictment for obstruction, or action on the case, &c."

If the fact that a road has been for many years a neighborhood road is of no weight in sustaining the action of County Commissioners in declaring it to be a public neighborhood road, when there has been a failure to comply with the provisions of the statute regulating the mode of establishing such a road, it seems to us that the fact that there has been a dedication by a private party by sale of lots according to a recorded plan, as in this case, and even a use by the public of the part of the street in question, would not, under the same or a substantially similar statute, authorize the County Commissioners to exercise the authority

of opening such part of the street after it has been enclosed and held adversely, in the manner indicated by the record, for a period of over thirteen years. We do not see anything in the statute that gives them any such authority. And assuming that the statute gives such authority to any class of road officers as to any road which is regarded and treated by road authorities in the performance of their regular duties as a public road, we still fail to see the application of such authority to a road or any part of one, where it or such part has for more than thirteen years been openly enclosed and adversely held, and neither during this time, nor before, have the road officials ever recognized it as a public highway. There is no pretence that this street, or any part of it, has ever been laid as either a public or a neighborhood road in accordance with the statute law as it existed either prior or subsequent to the passage of the act of 1874, and if it should be contended that the act of 1872 repealed the act of 1845, in so far as doing away with formalities as to laying out highways, it is a fact that the portion of the street in controversy has been enclosed, and not used by the public or as a highway since prior to the approval of said act, and no official action was taken as to it pending the interval between such approval of and that of the act of 1874, nor ever, until the action now in question was ordered.

It was argued on behalf of the appellees that in cases of dedications of the kind in question, some acceptance of the street or road dedicated, must be made by the proper road officers before a road or street can become a public highway where there is a statute like ours, and the forms of the statute have not been pursued, and there is no legislation declaring the particular street or road to be a public highway. There is some conflict of authority upon this question, and it is not necessary to pass upon the point. Admitting that

the making and recording of a plat and the sale of lots with reference to such plat, and the long continued use of the streets by the public may of themselves constitute the streets public highways, still we are without authority to show that where a part of a public highway has been enclosed under an alleged adverse holding as this street has been, and has not been used or in any manner treated as a public highway for over thirteen years, and has never been officially recognized as such, that the County Commissioners have been given the power to pass upon the relative rights or claims of the public and the obstructing party and enforce their judgment. We find no law making them the remedial agents of the public in such a case. There is nothing in the statute giving them any such power. The remedy of the public in such a case, even if the street is, or has been a public highway, within the meaning of the statute, is by indictment; and in so far, moreover, as the mere private rights of owners of lots in the plat are concerned, the County Commissioners have no power.

It is true that any person who sustains a special injury or damage from a public nuisance to an extent that will support an action at law may abate the same of his own motion, doing no more damage than is necessary to protect his rights and prevent a recurrence of damage from the nuisance abated. Wood on Nuisance, §733. We are not, however, dealing with this question, and it is not necessary to consider it, or how far such private person may go in the abatement of a nuisance. It is held that an individual has no right to injure or destroy the property of another because it is so situated as to be a public nuisance, unless such individual is exercising the public right which is obstructed by it, nor even then, if he can reasonably avoid it. Bowden vs. Lewis, 13 R. I., 189, and citations on page 192; Owens vs. State, 52 Ala., 400; Cobb vs. Bennett, 75

Penn. St., 326 ; Wait's Actions and Defences, Vol. 4, page 778 ; and that a citizen has no right to abate a public nuisance, if such abatement involves a breach of the peace. Day vs. Day, 4 Md., 262.

For the reason that we think the County Commissioners have no power to act in the premises, and without reference to any other question, we affirm the order granting the injunction.