# Lewis *v.* Coffee County.

*Action by County, on Statutory Bond for protection of Public Bridges against Injury from Rafts.*

1. *What streams are navigable.*—A river or stream above tide-water is, *prima facie*, private, and not subject to the public right of floating or rafting timber; but it will be held navigable, or subject to the public right of user, on proof that it has, in its natural state, sufficient depth and width to be used for the transportation of timber or logs, or the products of the forest, the mines, or the tillage of the country along its banks, to market; not necessarily at all seasons of the year, but periodically, and for a time long enough at each period to make it susceptible of beneficial use to the public.

2. *Same.*—Under the tests and rules established by the former decisions of this court and other authorities, Pea River in Coffee county can not be considered a navigable stream, when the evidence only shows that it is " a stream upon which logs could be floated only at high water, or during a freshet, by the public generally, to Pensacola, Florida, where it was generally marketed."

APPEAL from the Circuit Court of Coffee.

Tried before the Hon. H. D. CLAYTON.

This action was brought by Coffee County as plaintiff, against J. L. Lewis, A. H. Rodgers, and others; and was founded on a penal bond executed by the defendants, which was dated the 14th April, 1883, and conditioned as follows: "The condition of this bond is such that, whereas the said A. H. Rodgers has about one hundred and fifty sticks of hewn and sawn timber, in White Water creek in said county, which he is desirous of rafting and running down said creek into Pea River, both of said streams in said county, and across both of which public bridges have been built by said county; now, if the said Rodgers shall run his said timber down said stream, without any injury to any of the public bridges on said streams in said county, then this bond to be void; but, should injury result to any of said bridges, or any one or all of them be knocked down, destroyed, or otherwise damaged by reason of the running or rafting of said timber down said streams, by the said Rodgers or any other person or persons, then this bond shall be and remain in full effect," &c. The complaint set out the bond, and alleged as a breach thereof that, on or about the 14th April, 1883, the bridge across Pea River at Elba was knocked down and injured by the raft of said Rodgers. There was a demurrer to the complaint, which was overruled, and which it is unnecessary to notice; and sev-

[Lewis v. Coffee County.]

eral pleas were filed, to which demurrers were sustained. The main defense was, that Pea River was a navigable stream, that the county had no right to erect a bridge over it, and that the bond was therefore without legal consideration; and this defense was presented, both by the pleas, and by the charges requested on the evidence. "On the trial," as the bill of exceptions states, "the evidence showed that the stream over which said bridge was erected by the Commissioners Court, was a stream upon which logs could be floated only at high water, or during a freshet, by the public generally, to Pensacola, Florida, where it was generally marketed; that the bond sued on was given to prevent any injury to said bridge while the defendants were running their timber down said stream to market, and that there was no other consideration for said bond. This being all the evidence necessary to be set out, the defendants requested the court, in writing, to instruct the jury that, if the jury believed the evidence as to the consideration of said bond, they must find for the defendants." The court refused this charge, and the defendants excepted to its refusal; and they now assign its refusal as error, with other rulings which require no special notice.

N. W. GRIFFIN, and W. D. ROBERTS, for the appellants, cited *Pennsylvania v. Wheeling Bridge Co.*, 13 Howard, 519; *Railroad Co. v. Ward*, 2 Black, U. S. 245; Cooley's Const. Lim. 382–3; Sedgw. Stat. and Const. Law, 167; *Peters v. Railroad Co.*, 56 Ala. 528; *Walker v. Allen*, 72 Ala. 456.

JNO. D. GARDNER, and H. L. MARTIN, *contra*.

CLOPTON, J.—By "An act to provide for the security and protection of the public bridges in the county of Coffee" (Acts 1882–3, 257), it is declared unlawful for any person to float any raft of timber or logs down any of the streams in the county of Coffee, where there are one or more public bridges, without having first filed a bond in the office of the judge of probate, approved by him, payable to the county, in a sum not less than five hundred, nor more than one thousand dollars, at the discretion of the judge of probate, and conditioned to pay all such damages as may result to any of the public bridges therein, in consequence of the floating of any timber or logs over any of the streams in the county where such bridge is located. The action is brought by the county, to recover damages for the breach of a bond given under the provisions of this act; and the defense insisted on is, that the stream, across which the bridge is erected, is a navigable water;

[Lewis v. Coffee County.]

that the statute is unconstitutional, and the bond is without a valid or legal consideration.

Pea River, the stream in question, is above tide-water, and *prima facie* private—not subject to the public right of floating or rafting timber or logs. Every definition of a navigable fresh-water stream must be necessarily general, modified to some extent by the peculiar conditions of its locality and the special wants of the inhabitants. In sections where the transportation of lumber is an important or controlling business, circumstances and the necessities of trade have impressed the character of navigability, which fail in other conditions where no such pressing necessities exist, and there are other interests equally or more important to subserve. It may be said, generally, any stream, though above tide-water, "of sufficient capacity to float the products of the mines, the forests, or the tillage of the country, through which they flow, to market," is a navigable water; and, by the act for the admission of Alabama into the Union, "shall forever remain public highways, free to the citizens of said State and of the United States." Said FIELD, J., in *The Daniel Ball*, 10 Wall. 557: "Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact, when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." And in *The Montello*, 20 Wall. 430, it is said: "It would be a narrow rule to hold that, in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway. The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use. If it be capable, in its natural state, of being used for purposes of commerce, no matter in what mode the commerce may be conducted, it is navigable in fact, and becomes in law a public river or highway." As the result of the current of authorities, it may be conceded, that a stream of sufficient depth and width, in its natural state, to be used for the transportation of timber or logs, though it may not not be technically navigable, is subject to the public right of *user*.

The question, what constitutes a navigable stream, has been heretofore considered by this court, and the tests applicable have been determined. In *Ellis v. Carey*, 30 Ala. 725, it was held, that a creek, not affected by the ebb and flow of the tide, which had never been declared a public highway by legislative authority, and was not treated as a navigable stream by the United States surveyors, is not a navigable stream, though

during twenty years keel-boats, loaded with cotton, had been several times floated, and timber and lumber rafted down it during the winter season, but during the summer there was not sufficient water for these purposes. A distinguishing test, approved by the court, was, whether a stream is "susceptible or not of use as a common passage by the public." In *Rhodes v. Otis*, 33 Ala. 578, it was said : " In determining the character of a stream, inquiry should be made as to the following points : whether it is fitted for valuable floatage ; whether the public, or only a few individuals, are interested in transportation ; whether any great public interests are involved in the use of it for transportation ; whether the periods of its capacity for floatage are sufficiently long to make it susceptible of use beneficially to the public; whether it has been previously used by the people generally, and how long it has been so used ; whether it was meandered by the government surveyors, or included in the surveys; whether, if declared public, it will probably in future be of public use for carriage. And in the application of these inquiries to the facts of a case, it is to be remembered that the *onus probandi* is upon the party claiming that a stream above tide-water is public." These tests were cited with approval in *Peters v. N. O., Mo. & Chatt. R. R. Co.*, 56 Ala. 528.

We do not understand, that to constitute a navigable stream it is requisite there shall be sufficient water for the common uses of trade and commerce during all seasons of the year. It must, however, as the results of natural causes, be capable of valuable floatage periodically during the year, and so continue long enough at each period to make it susceptible of beneficial use to the public. Says Cooley : " If a stream is of sufficient capacity for the floating of rafts and logs in the condition in which it generally appears by nature, it will be regarded as public, notwithstanding there may be times when it becomes too dry and shallow for the purpose. . . . . A brook, although it might carry down saw-logs for a few days, during a freshet, is not therefore a public highway." In general, a stream, to be navigable, in its legal meaning, must be of such character, as to be of actual or practical utility to the public as a channel of trade or commerce.—*Hickok v. Hine*, 23 Ohio St. 523 ; *Hubbard v. Bell*, 54 Ill. 110 ; *Wethersfield v. Humphrey*, 20 Conn. 218 ; *Neaderhouser v. State*, 28 Ind. 257 ; *Barclay R. & C. Co. v. Ingham*, 36 Penn. St. 194 ; *Rowe v. Granite Br. Co.*, 21 Pick. 344 ; *Morgan v. King*, 35 N. Y. 459 ; *Thunder Boom Co. v. Speechley*, 31 Mich. 336.

The only evidence respecting the navigability of the stream, shown by the record, is, that it " was a stream upon which logs could be floated only at high water, or during a freshet, by the

13

[Fire Insurance Companies v. Felrath.]

public generally, to Pensacola, Florida, where it was generally marketed." There is no inquiry, whether it is suitable for valuable floatage or rafting; to what extent the public are interested in transportation; what public interests are involved; whether the stream had been previously used, and how long, or what length of time, the capacity for floatage or rafting continued. On the facts shown by the record, Pea river is not a navigable stream at the place where the bridge is erected.

This conclusion renders unnecessary a consideration of the other questions presented in the argument of counsel.

Affirmed.