# Olive v. The State.

*Indictment for Injury to Mill-Dam.*

1. *Judicial notice of public rivers.*—This court takes judicial notice of the fact, that Sipsey river is above tide-water, and is therefore, *prima facie*, non-navigable; and of the further fact, that it was not excluded from the government survey of the lands through which it flows.

2. *Statute declaring stream to be public highway, and authorizing removal of obstructions.*—The act approved Dec. 23d, 1837, declaring the Sipsey river a public highway, but making no provision for compensation to riparian owners who might be damaged by the use of the stream for the purposes of navigation, "could not have the effect of making it a public highway, unless in point of fact it was a navigable stream;" and the act approved March 2d, 1876, incorporating the Sipsey River Navigation Company, giving it power to "open and improve the navigation of said river by removing obstructions," &c., can not protect the officers and agents of said company from prosecution for willful injuries to a mill-dam on the river (Code, § 3886), above the highest point to which they had opened and improved the navigation of the stream.

3. *What constitutes navigable river.*—The evidence in this case showing "that the Sipsey river was sufficient for the floatage of logs and flat boats during the winter season, and that saw-logs and rafts could be floated during high water over the dam" of the prosecutors, which the defendants were charged with injuring by floating logs over it; it can not be affirmed, as matter of law, that the stream is a public highway; but the evidence should be submitted to the jury for their consideration in determining the character of the stream as matter of fact.

4. *Prescriptive right to mill-dam, or other obstruction of river.*—No length of time can confer a prescriptive right to maintain or continue a mill-dam or other obstruction of a public stream.

FROM the Circuit Court of Greene.

Tried before the Hon. SAM. H. SPROTT.

The indictment in this case charged that the defendants, Thomas C. Olive and others, "did willfully injure a mill-dam of a mill known as the *Sipsey Mills*, situated on the Sipsey river, said mill being the property of Mose Horton and Bob Horton, by floating logs over said mill-dam." On the trial, as appears from the bill of exceptions, the evidence for the State tended to show that the Hortons, Mose and Robert L., owned the mill on the Sipsey river, with the land on each side, the mill-house being on the Pickens side, and the mill-dam extending across the river to Greene county; "that said

mill and dam had been there as long as 38 years, said Hortons having owned the property about four years, and their father for quite a number of years previously; that in March, 1886, before the finding of the indictment in this case, the defendants floated saw-logs down the river from above the dam, and greatly injured it;" that the Hortons had notified the defendants that the logs could not then be floated over the dam without injury to it, and pointed out to them the marks which indicated the stage of the river at which logs could be safely floated over; that Olive declared, "they would go over it any way;" and another one of the defendants, "that they were going down then with their logs, and were going over even if they had to tear the dam out."

The defendants read in evidence three acts of the General Assembly of Alabama, as follows : 1st, an act approved December 23d, 1837, entitled "An act to declare Sipsey river a public highway;" 2d, an act approved February 2d, 1839, entitled "An act to incorporate the Sipsey River Navigation Company;" 3d, an act approved March 2d, 1876, entitled "An act to incorporate the Alabama Sipsey River Navigation Company, and to prescribe its duties and regulate its powers." The first of these acts declares, by its 1st section, "that Sipsey river, from its month to George Humphreys' in the county of Marion, is hereby declared a public highway;" the 2d section provides, "that any person obstructing the navigation of said river, by building mill-dams, fish-traps, or in any way," shall forfeit and pay $1,000, "and all such obstructions shall be removed by order of the County or Circuit Court, as a public nuisance;" and the 3d section, "that this act shall not be so construed as to interfere with any mill or bridge already erected on said river." The second act requires no notice, as nothing seems to have been done under it. The third act contains thirteen sections, the first seven of which relates to the organization of the corporation; the 8th section provides, "that the president and directors of said company shall have power and authority to open and improve the navigation of the Sipsey river, from its mouth to the line of Marion county, by removing the obstructions therein, and opening a canal or canals, or in any other such way as the company may deem expedient," with a proviso as to obtaining the consent of land-owners; the 9th and 10th sections provide for proceedings under a writ of *ad quod damnum*, where the consent of land-owners can not be obtained; the 11th section gives the company fifteen years,

[Olive v. The State.]

within which to complete their work upon said river in open-
ing the same up to navigation," and the exclusive right to
navigate the stream for thirty years after the completion of
their work; the 12th section provides, "that any obstructions
hereafter created or placed upon said stream, by the erection
of bridges, mills, dams, or otherwise, shall, whenever the
company has, in the progress of its work, reached the point
of any such obstructions, be liable to be removed by said
company; and the 13th section repeals all inconsistent laws.
Sess. Acts 1875-6, pp. 318-22.

"The defendants introduced, also, evidence tending to show
that the Sipsey river was sufficient for the floatage of logs
and flat-boats during the winter season, and saw-logs and
rafts could be floated over the dam in question during high
water; that their said logs were rafted and floated down the
river from Fayette county, by the Alabama Sipsey River
Navigation Company, through said Olive as its president,
the other defendants acting under his employment; that said
company was organized as a corporation according to law,
but had not cleaned out the river; that the defendants waited
above the dam with their logs, for two weeks or more, for the
water to rise, so that they could go over the dam safely; that
a thaw of ice and snow came, and the river did rise; that
they then cut their logs loose, so as to cause them to go
over safely, and, with the advice of persons acquainted with
the river, floated them over; that the dam gave way the night
after the logs were floated over; and that the part of the dam
which was injured had been moved up the river from five to
fifteen feet, a year before the injury."

On this evidence, the court charged the jury, "that the
Sipsey river was not a public highway under said acts of the
legislature, as it had not been cleaned out and adapted to the
purposes of navigation as contemplated in said acts;" also,
"that the fact that the Hortons' dam was shown to have
existed there for many years, established the fact that it was
rightfully in the river, and rendered the defendants amend-
able to the criminal law, if they willfully injured the dam in
passing their raft of logs over it." The court also gave the
following charge, asked in writing at the instance of the
State: (2.) "If the jury believe from the evidence that the
defendants run their logs over the dam recklessly, care-
lessly, and without caring whether they injured the dam or
not, and in so doing did injure the dam; then they are guilty
as charged in the indictment."

[Olive v. The State.]

The defendants excepted to each of these charges as given, and also to the refusal of several charges asked by them in writing, among which were the following: (1.) "If the jury believe from the evidence · that the logs which injured the mill-dam belonged to the Sipsey River Navigation Company, and were rafted and floated by said company through said Olive as its president, with the assistance of the other defendants, then the defendants who merely assisted, as laborers, to cut the logs loose, can not be convicted under the indictment in this case." (2.) "The evidence shows that the Sipsey river is a navigable stream, and a public highway." (3.) "Before the jury can convict the defendants, they must be satisfied from the evidence that the mill-dam involved was legally erected."

MARTIN & McEACHIN, for appellants.—(1.) The Sipsey river, under the evidence in the case, is a navigable stream as matter of fact; and it was made a public highway by the legislative acts read in evidence.—Angell on Water-Courses, § 535, note 2; *Rhodes v. Otis*, 33 Ala. 592; *Sullivan v. Spottswood*, 82 Ala. 167; *Ellis v. Carey*, 30 Ala. 725; *Walker v. Allen*, 72 Ala. 456; 10 Wall. 537; 20 Wall. 430. (2.) The State may grant to individuals, or to a corporation, the exclusive right to navigate a public stream.—Angell on Water-Courses, §§ 537, 561; *Com. v. Bond*, 4 Peck, 460; 12 Peters, 91; 14 How. 568; 3 Wall. 713. The exclusive right in this case having been granted to the Sipsey River Navigation Company, whose agents and servants the defendants were, in floating their logs over the mill-dam, they committed no criminal offense. (3.) If the river was a navigable stream and public highway, there could be no prescriptive right to obstruct its navigation by a mill-dam, or otherwise.—*Stoughton v. Baker*, 4 Mass. 522; 2 Barn. & Al. 662; Angell on Water-Courses, § 254; Woolr. Waters, 270.

THOS. N. MCCLELLAN, Attorney-General, for the State.

STONE, C. J.—The appellants were convicted under section 4418 of the Code of 1876 (now a part of section 3886, Code of 1886), for willfully injuring a mill-dam on the Sipsey river, at a point where that stream constitutes the line between the counties of Pickens and Greene, by floating logs over it. One of the prominent questions raised in the court below, and presented here by the bill of excep-

tions, involves the character of the Sipsey river, at the place
of the alleged offense, as to navigability. The court judi-
cially knows, that the whole of said river is above the ebb
and flow of tides. It is therefore *prima facie* unnavigable,
and the *onus* of impressing it with the character of a public
highway was upon the defendants in the Circuit Court. In
attempting to do so, they introduced, without objection,
three acts of the General Assembly—closing with other evi-
dence to be presently considered—which have reference to
the navigation of this stream. The first of these, passed in
1837, declares Sipsey river a public highway, from its mouth
to a point in the county of Marion, far above the *locus* of
the alleged offense, but it makes no provision for compen-
sation to riparian owners, who might be damaged by the
use of the stream for the purposes of navigation. This
statute was probably repealed by another of the acts men-
tioned; but, whether that be true or not, it could not have
the effect of making the water-course a public highway,
unless in point of fact it was a navigable stream.—Angell on
Water-Courses, sec. 541; *Morgan v. King*, 35 N. Y. 454.
The other acts of 1839 and 1875, respectively, were sub-
stantially the same, each being for the incorporation of a
company to "open and improve the navigation" of the Sipsey
river; each giving the company exclusive control of the
navigation of the river, after it had opened and improved the
river for that purpose, and each providing *ad quod damnum*
proceedings for the subjection of the property of riparian
owners to the uses of the company. The latter of these acts
contains a repealing clause, as to all conflicting statutes,
which includes probably the act of 1837, *supra*. Under the
act of 1839, nothing appears to have been done. Under that
of 1875, the corporation was organized, and entered upon
the business for which it was created; but, at the time of
the injury charged, the navigation of the river had not been
"opened and improved" up to the point where the mill-dam
was situated, if at all, and hence the character of the stream
had not been changed so far as that part of it was concerned;
and although these defendants were the officers and employees
of said corporation, and committed the act charged in the
prosecution of the corporation's business, they can claim no
immunity from punishment on that ground, because the
terms of the act, upon compliance with which their right to
navigate the river under it depended, had not been complied
with.—Acts 1875-6, p. 318. The rulings of the court below,

[Olive v. The State.]

as to the effect of these several statutes, and the defendants' rights under them, are therefore free from error.

These considerations leave the character of the stream with reference to navigability to be determined by the jury under the charge of the court. The tests to be used in reaching a conclusion on this point are those which apply to all streams in the State which are above the ebb and flow of the tides. These tests are of two classes; one having reference to streams alleged to be navigable throughout the year; the other, to streams navigable only for a part of each year, or for certain seasons. As to the former, it is sufficient to show *adaptability* for the purposes of navigation or valuable floatage of the products of the country, at the usual stage of water, without reference to the past, present or prospective uses of the stream for these purposes.—*Walker v. Allen*, 72 Ala. 456. The Sipsey river appears from the evidence in this case to belong to that other class of water courses, "which are suitable for the purposes of transportation only during certain periods, of varying duration, recurring from year to year, and for limited purposes." As to a stream of this character, the inquiry relates to its fitness, and the period of its capacity for valuable floatage; the number of individuals interested, and the extent of the public interest involved in its use for transportation; the length of time previously used by the public, and its prospective public use; and whether the bed of the stream was embraced in the government surveys of the territory through which it runs, or was excluded therefrom by meanderings. Whether it be necessary, in all cases, to fill the measure of all these tests by satisfactory evidence, we do not decide. We judicially know that the bed of this river was included in the surveys of the country; and this fact gives additional strength to the presumption of non-navigability resulting from disconnection with tide-waters. Whatever may be the smallest measure of proof required to impress a stream of the class under consideration with a public character, we hold that the evidence adduced in this case, to the effect that the "river was sufficient for the floatage of logs and flatboats during the winter seasons", and that the particular logs with which the injury complained of was caused, had been floated from Fayette county, was not sufficient to authorize the charges requested by the defendants, declaring the stream to be *per se* a public highway; and the refusal of the court to give these charges was proper.—

[Potts v. Coleman.]

*Rhodes v. Otis*, 33 Ala. 578; *Walker v. Allen*, 72 Ala. 457; *Lewis v. Coffee County*, 77 Ala. 193; *Sullivan v. Spotswood*, 82 Ala. 165.

But, while the evidence set out in the bill of exceptions was not sufficient to authorize the court to declare the character of the stream as a matter of law, it should have been submitted to the jury for their consideration in determining the character of the river, as a matter of fact.—*Peters v. N. O., M. & C. R. R. Co.*, 56 Ala. 528. And if they had found that the river was a public highway, the public use of which was obstructed by the dam in question, they would have been authorized to acquit the defendants.—*Owens v. State*, 52 Ala. 400. And this without regard to the length of time the dam had been in the river, since there can be no prescriptive right to maintain or continue an obstruction to the navigation of a public stream.

That part of the general charge of the court which is to the effect, that the existence of the dam for many years established the fact that it was rightfully in the river, &c., was therefore erroneous. The second charge given at the request of the solicitor also withdrew from the jury's consideration the evidence which tended to show that the river was navigable, and the obstruction therefore unlawful, and should have been refused. There are no other errors in the record.

Reversed and remanded.