# Blackman *v.* Mauldin.

*Bill to Abate a Nuisance and For Special Damages.*

(Decided Nov. 23, 1909.    51 South. 23.)

1. *Navigable Waters; Non Tidal Stream.*—A non tidal stream not meandered in the United States survey of 1852, is a non navigable stream prima facie.

2. *Same; Test of Navigability.*—Where a stream is navigable for only part of a year and is a fresh-water stream, the following matters should be taken into consideration, is determining as to its navigability; 1st, whether the stream is suitable for valuable floatage, for a sufficient length of time for its beneficial use by the public. 2nd, whether the public, or only a few individuals, are interested in transportation, or any great public interest are promoted in its use for transportation. 3rd, whether it has been previously used generally and how long it has been and will be by the public, and 4th, whether it was meandered by government survey or included therein.

3. *Same; Floatable Streams.*—Where a fresh-water stream, when not swollen by freshets, or depleted by drought, and in a settled country, is capable of floating mining and forest products, etc., periodically without artificial aid, and has been and will likely continue to be so used it is a floatable stream subject to public usage.

4. *Same; Obstruction; Equity; Jurisdiction; Repeated Injuries.*—Equity will intervene to prevent the continued repetition of damages to one's milling business by the maintenance of a dam in a floatable stream, depriving him of the profits to be earned since such damages are not recoverable in an action at law.

5. *Same; Remedies; Damages.*—Damages for depreciation in the valuation of timbers by remaining too long in the water when stopped by the dam, and the expenses of maintaining a rafting crew until the timber is released, are properly allowed in a suit to enjoin the maintenance of a dam which prevented complainant's timber from floating down the stream.

6. *Same; Obstruction; Prescription.*—There is no prescriptive right to maintain an obstruction in a public stream.

7. *Same; Right of Floatage.*—While the right of floatage in streams navigable only for floatage for a part of the year will be maintained, and no unreasonable obstruction allowed to be placed therein, the public has not such an unqualified right to the use of such stream as it has to those navigable for all purposes, and the right of floatage cannot be exercised so as to prevent riparian owners from utilizing the water power or prevent such other reasonable uses as the public may make of the same.

8. *Damages; Pleading.*—Damages not claimed or alleged cannot be recovered.

9. *Pleading; Allegation; Conclusions.*—An allegation in an answer to a bill to enjoin the maintenance of a dam on a navigable stream that the mill was established by law is not sufficient as it is a conclusion; such answer should allege some statute or decree authorizing its establishment and maintenance.

10. *Appeal and Error; Objections Below; Allowing Damages Not Alleged.*—The allowance of damages not alleged in the bill creates inherent error in the decree and need not have been raised below by exceptions to the register's report; such error does not appear for the first time when his report is made, and hence will be corrected on appeal.

11. *Same; Register's Report; Excessive Damages.*—Where the report of the register was not contested in the court below on the ground of excessive damages and no exception was reserved thereto on that ground the question cannot be raised on appeal.

APPEAL from Dale Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by C. M. Mauldin against J. C. Blackman to enjoin the maintenance of a boom or dam across a floatable stream, and for damages. Decree for complainant and respondent appeals. Corrected and modified, and affirmed.

H. L. MARTIN, for appellant. There is no sufficient allegation and no sufficient proof that the stream was a navigable stream, and this was necessary before the plaintiff could maintain his suit.—*Lewis v. Coffee*

*County,* 77 Ala. 190. Complainant could not maintain
this suit because he has no different or special interest
from the public at large.—127 Ala. 326; 140 Ala. 272;
144 Ala. 466. It is not shown that the damages were
such as could not be recovered at law.—4 Pom. 1349.
All that could be said of the stream is that it is valuable
for floatage of timber. Error in assessing damages not
claimed or alleged inheres in the decree and may be cor-
rected on appeal.—21 Ala. 433; 39 Ala. 202; 73 Ala. 318.

O. C. DOSTER, and M. SOLLIE, for appellee. The allega-
tions of the bill were sufficient to authorize the injunc-
tion and damages.—*Olive v. The State,* 86 Ala. 88;
*Walker v. Allen,* 72 Ala. 456; *Sullivan v. Spottswood,*
82 Ala. 163; *Boozer v. McMillan,* 105 Ala. 395; *Roads v.
Otis,* 33 Ala. 578; *Morrison v. Coleman,* 87 Ala. 655;
*Sipsy R. L. Co. v. G. P. R. R. Co.,* 87 Ala. 154; *Hundley
v. Harrison,* 123 Ala. 296; 20 Wall 130; 125 U. S. 1; 16
A. & E. Ency. of Law, 937. The answer was not suffi-
cient as to the right to erect and maintain the dam, and
the court will pay no attention to such matters appear-
ing in the answer even though the proof exactly sup-
ports it.—*May v. Folsom,* 113 Ala. 202; 128 U. S. 250.
The complainant sustained injuries other and different
from that of the public at large.—*Hundley v. Harrison,
supra; Whaley v. Wilson,* 112 Ala. 627. It was not nec-
essary that complainant establish his right at law be-
fore he can get relief in equity.—*Ninninger v. Norwood,*
72 Ala. 277; *Kingsberry v. Flowers,* 65 Ala. 484; *Eng-
lish v. Elec. L. & M. Co.,* 95 Ala. 246.

SAYRE, J.—The bill in this cause was filed in
March, 1906. In 1892 the defendant had established on
the bank of the East Choctawhatchee river, four miles
above its junction with the West Choctawhatchee, his

mill, where he ground corn, ginned cotton, and sawed and planed lumber. The power which ran his mill was secured from a dam extending across the stream. For some years he had 'maintained a chute, so that logs driven down the river might have passage over the dam. That. was the custom of millowners on streams in that part of the state, and defendant's dam seems to have been acquiesced in as long as he maintained the chute. But latterly the chute had fallen into decay, so as to become useless, and defendant had constructed a boom across the river above the dam, the effect and purpose of which, as the defendant states it, was to secure his own logs and to prevent logs and timber from floating down against and destroying his dam. About 12 months before the filing of the bill in this cause complainant had erected a mill about 24 miles above defendant's mill, as the river runs, where he entered into the business of squaring timber to be floated down to market. A day or two before the bill was filed, complainant with 220 sawed logs, worth about $2,000, and which he had floated down from the stream above, was stopped by defendants' boom and refused further passage, except upon the payment of toll. The bill was filed to abate defendant's dam and boom as a nuisance, and for the recovery of special damages suffered by the complainant.

The equity of complainant's bill, and the propriety of the relief afforded to him by the decree of the chancery court, depend upon the tenability of his assertion that East Choctawatchee river at and below and above the point where defendant's mill is located is a navigable water. The Choctawatchee river and its forks in Dale county are not tidal streams, of course, nor were they meandered in the survey of 1823 by the government of the United States above the fork. Prima facie, therefore, the East fork is not a navigable water. But, as

was said by the Supreme Court of the United States in
*The Daniel Ball,* 10 Wall. 557, 19 L. Ed. 999: "Those
rivers must be regarded as public navigable rivers in law
which are navigable in fact. And they are navigable in
fact when they are used, or are susceptible of being used,
in their ordinary condition, as highways for commerce,
over which trade and travel are or may be conducted in
the customary modes of trade and travel on water." And
in *The Montello,* 20 Wall. 430, 22 L. Ed. 391, it was said
that the true test of the navigability of a stream does
not depend on the mode by which commerce is, or may
be conducted, nor the difficulties attending navigation,
and that, if this were so, the public would be deprived
of the use of many of the large rivers of the country,
over which rafts of lumber of great value are constantly
taken to market. In *Lewis v. Coffee County,* 77 Ala.
190, 54 Am. Rep. 55, after quoting the cases above re-
ferred to, this court stated that it was to be conceded as
the result of the current authority that a stream of suf-
ficient depth and width, in its natural state, to be used
for the transportation of timbers or logs, though it may
not be technically navigable, is subject to the public
right of user.

In *Rhodes v. Otis,* 33 Ala. 578, 73 Am. Dec. 439, which
has been frequently cited and more than once quoted,
and which may with propriety be quoted again, because
it formulates those evidential facts upon consideration
of which causes of this character—by which is meant
causes involving fresh-water streams navigable only for
a part of each year, or for certain seasons, and not
streams navigable throughout the year—must be de-
termined, it was said that, in fixing the character of a
stream, inquiry should be made as to the following
points: "Whether it is fitted for valuable floatage;
whether the public, or only a few individuals, are inter-

[Blackman v. Mauldin.]

ested in transportation; whether any great public inter-
ests are involved in the use of it for transportation;
whether the periods of its capacity for floatage are suffi-
ciently long to make it susceptible of use beneficially to
the public; whether it has been previously used by the
people generally, and how long it has been so used;
whether it was meandered by the government surveyors,
or included in the surveys; whether if declared public,
it will probably in future be of public use for carriage.
And in the application of these inquiries to the facts of
a case, it is to be remembered that the onus probandi is
upon the party claiming that a stream above tide water
is public."

. In our decisions no one of these considerations, nor
any number of them less than the whole, has been given
controlling influence, nor has the smallest measure of
proof required to impress a stream of this class with a
public servitude been defined. The result seems to be
that if, at the end of these inquiries, it appears that a
fresh-water stream in a settled country, not when swoll-
en by freshets or unusual rains, nor when depleted by
prolonged droughts, without improvement or artificial
aid, becomes, with recurring seasons, periodically capa-
ble of valuable floatage for the products of the forests,
mines, or tillage of the country down to mills and mar-
kets, and so continues for considerable periods, and has
been so utilized, and will likely continue to be so utiliz-
ed, to answer public needs, it must be declared subject
to the public right of user. It is to be denominated as
a floatable stream.—*Lewis v. Coffee County, supra;
Walker v. Allen,* 72 Ala. 456; *Sullivan v. Spotswood,*
82 Ala. 163, 2 South. 716; *Olive v. State,* 86 Ala. 88, 5
South. 653, 4 L. R. A. 33; *Ala. Sipsey River Nav. Co. v.
Ga. Pac. Ry. Co.,* 87 Ala 154, 6 South. 73; *Bayzer v. Mc-
Millan Mill Co.,* 105 Ala. 395, 16 South. 933, 53 Am. St.
Rep. 133.

The allegations of the original and amended bill fairly and sufficiently disclose that the East Choctawhatchee river, at and above the defendant's dam and boom, and thence to the Gulf of Mexico, is a navigable or floatable stream within the meaning and purport of the decisions of this court and of the Supreme Court of the United States to which we have had reference. The motion to dismiss for want of equity was therefore well overruled.

The demurrer to the bill was properly overruled also. The bill, in addition to the averment of special damage to the complainant arising immediately out of the stoppage of his timber, states damages to acrue to his milling business, which, while sensible to him, are of such a nature—i. e., deprivation of estimated profits to be earned—that no recovery can be had for them in a court of law. They are incapable of that measure of proof which is required as the basis of a judgment at law, and this is a sufficient reason why a court of equity should interfere to prevent their repeated and continual accrual.—*First National Bank v. Tyson,* 133 Ala. 459, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46. Special damages are claimed in the bill for depreciation in the value of the timber by lying an undue length of time in the water, and the expense of maintaining the complainant and his crew of hands pending the release of the timber from detention. These damages were properly allowed.—*Plummer v. Penobscot Lumber Ass'n.,* 67 Me. 363. The demurrer to the bill on this account was properly overruled.

Other damages allowed by the chancellor's decree of reference were not allowable against the defendant for the sufficient reason, among others, that they were not claimed in the bill; and of his exception to such allowance the appellant may have the benefit here, for the

reason that the error in this respect inhered in the decree which directed the allowance. It was not an error which appeared for the first time on the coming in of the register's report, and which would need be called to the court's attention by an exception to the report. This element of error will be eliminated by the decree here. As for the rest, appellant can take nothing by his appeal. The amount ascertained by the register, and confirmed by decree of the court, may appear to be in excess of the amount necessary to make the appellee whole; but it was not contested before the register, nor was the remedial judgment of the court below invoked by exceptions to the register's report. Under these conditions, appellant must abide by the decree of the chancery court, except in the particular noted.

It would not respond to any general interest, nor serve any useful purpose, to set down in detail our consideration of the voluminous testimony submitted in this cause. It shows that the stream in question flows through a section of the state where there are forests of pine, poplar, cedar, and other growth, the product of which are of great value in the markets of the world; that the nearest railroad is so remote that shipments by it are unprofitable, while the stream is the only public highway accessible for profitable shipments to foreign parts; that in its natural state and in usual seasons loose logs and timber can be profitably floated upon it during a large part of each year, and this capacity for floatage is not dependent upon freshets or an unusually swollen condition; that it has been used for floating or driving logs and timber for many years, and will in all probability continue to be so used for years to come; and that complainant is individually interested in the use of the stream for the floatage of the product of his mill, and peculiarly damaged by its obstruction. Indeed, we

[Blackman v. Mauldin.]

think the testimony noted by the defendant may be fairly said to establish these facts. The allegations of the bill and the proof are in substantial concurrence, and the complainant was entitled to relief.

It further appears that the defendant owns the land on both sides of the stream, and the bed under it, at the point where his mill is located. He alleges in his answer, and states in his testimony, that his mill was established by law. But neither the allegation nor the proof in respect to its establishment by law is sufficient to avail him anything. He must refer to some act of the Legislature or the decree of some court of competent jurisdiction. The court knows of neither; and the method of allegation and of proof are alike insufficient to evoke a decree establishing defendant's right on the basis to which resort seems here to be had. Nor can it avail the defendant that his mill has been established for a number of years. There can be no prescriptive right to maintain an obstruction to the navigation of a public stream.—*Olive v. State, supra.*

But we are not disposed to accord to the public the same unqualified right to the use of streams valuable only for the floatage of loose logs and timber as in the case of streams navigable in the true sense of that word. The right of floatage must be preserved to the extent which the experience of those who have utilized the stream for that purpose has shown to be practicable and profitable, and to meet the probable future needs of the country which it serves. Its water may not be diverted nor consumed so as to render impossible its customary use, nor must insuperable obstacles be put across the stream. But a just regard for the rights of the owners of the beds and banks of the streams capable only of such limited use would require that their situation be considered in judicial decision. Such consideration

cannot be unreasonable in the circumstances of this case, because during considerable parts of the year the stream is not capable of floatage, and at such times it would be unreasonable to deprive the owner of the opportunity to utilize the water power of the stream, or to make such other uses of his property as will not unreasonably interfere with those uses of the stream which the public has and will hereafter make of it. Gristmills, sawmills, and gins serve also a public purpose.

In this connection, as well stating the equitable basis for the doctrine, we quote the language of Dickerson, J., in *Lancey v. Clifford,* 54 Me. 487, 92 Am. Dec. 561: "Reasonable use is the touchstone for determining the rights of the respective parties. Thus, in considering this subject we find the public right of way over the stream, and the landowner's right of soil under it, and his right to use its flow. The rights of both these parties are necessary for the purpose of commerce, agriculture, and manufactures. The products of the forest would be of little value, if the riparian proprietors have no right to raise the water by dams and erect mills for the manufacture of these products into lumber. The right to use the water of such streams for milling purposes is as necessary as the right of transportation. Indeed, it is this consideration that oftentimes imparts the chief value to the estate of the riparian proprietors, and without which it would have no value whatever in many instances. Each right is the handmaid of civilization; and neither can be exercised without, in some degree, impairing the other. This conflict of rights must be reconciled. The common law, in its wonderful adaption to the vicissitudes of human affairs, and to promote the comfort and convenience of men, as unfolded in the progress of society, furnishes a solution of this difficulty, by allowing

the owner of the soil over which a floatable stream, which is not technically navigable, passes, to build a dam across it, and erect a mill thereon, provided he furnishes a convenient and suitable sluice or passageway for the public use by or through his erections. In this way both these rights may be exercised without substantial prejudice or inconvenience."

We therefore hold that, on a stream which is valuable for the floatage of loose logs, but not for navigation in any more enlarged sense, it cannot be said that the right of such floatage is so far paramount to the use of the water for machinery and other valuable purposes as to require the sacrifice of the latter to the former.— Farnham on Waters, § 29; *Middletown v. Flat River Booming Co.,* 27 Mich. 533; *Gaston v. Mace,* 33 W. Va. 14, 10 S. E. 60, 5 L. R. A. 392, 25 Am. St. Rep. 848; *Commissioners of Burke Co. v. Catawba Lumber Co.,* 116 N. C. 731, 21 S. E. 941, 47 Am. St. Rep. 839.

In pursuance of the conclusions reached, the decree of the chancery court will be modified and corrected, so as to perpetually enjoin the maintenance of his dam by the defendant without a chute or sluiceway ample to conveniently carry over the dam, from the water above into the water below, any round or square log which can be floated down to it from the stream above, and so as to reduce the decree for damages, to the sum of $252.55 as of this day; and, as modified and corrected, the several decrees of the chancery court will be affirmed.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.