JOHN L. MILLER v. STATE.

'(*Nashville.* December Term, 1910.)'

1. **NAVIGABLE STREAMS.** Legislative act declaring a non-navigable stream to be navigable is unconstitutional because its effect, if valid, would be to deprive the riparian proprietors of their title and use of the bed of the stream, without compensation.

The legislature cannot arbitrarily declare a stream to be navigable, when it is in fact not so in a legal or technical sense, because such legislative act would be void as violative of the constitutional provision (art. 1, sec. 21) against the taking of private property for a public use, without the consent of the owner, through his representatives, and without just compensation therefor, for the reason that such act would, if valid, deprive the riparian proprietors of their title and use of the bed of the stream without compensation. (*Post, pp.* 300, 301.)

Acts cited and construed: Acts 1837-38, ch. 39; Acts 1879, ch. 165; Acts 1893, ch. 118.

Constitution cited and construed: Art. 1, sec. 21.

Cases cited and approved: Stuart v. Clark, 2 Swan, 17; Railroad v. Ferguson, 105 Tenn., 552; Griffith v. Holman, 23 Wash., 347; Murray v. Preston, 106 Ky., 561; People v. Mill Co., 107 Cal., 221; Bayzer v. Mill Co., 105 Ala., 395; Walker v. Board, 16 Ohio, 540; State v. Pool, 74 N. C., 402; Morgan v. King, 35 N. Y., 454; Partridge v. Eaton, 63 N. Y., 482; Barclay, etc., Co. v. Ingham, 36 Pa., 194; Allen v. Weber, 80 Wis., 531.

2. **SAME.** Must be navigable in the ordinary state of water, by vessels usually employed for ordinary commerce.

A navigable stream is one that in the ordinary state of water, has capacity and suitability for the usual purposes of navigation, ascending or descending, by vessels such as are usually

employed in the ordinary purposes of commerce. (*Post, pp.* 301, 302.)

Cases cited and approved: Elder v. Burrus, 6 Humph.. 358; Stuart v. Clark, 2 Swan, 17; Sigler v. State, 7 Bax., 496; Holbert v. Edens, 5 Lea, 204; Webster v. Harris, 111 Tenn., 676.

3. SAME. Streams navigable only for floatage of logs and rafts for ten or twelve days in a year are not navigable in a legal sense.

Wolf river is not navigable within the sense of the definition of a navigable stream, because it cannot be navigated profitably for commercial purposes, ascending at any time, and can only be used, descending, for the transportation of logs and rafts for short periods of time, ten or twelve days in each year. (*Post, p.* 302.)

4. SAME. Public highway easement in streams not navigable in a legal sense, but navigable for the profitable floatage of crafts and rafts at regularly recurring seasons, but the riparian ownership is absolute and exclusive in streams of less size.

While the beds of all streams not navigable in the legal sense belong to the riparian proprietors and are private property, yet this ownership of the beds of all such nonnavigable streams is not absolute and exclusive in all cases; for if, in its natural state, the volume of a stream, whether ordinary or swollen by rains occurring with reasonable certainty at regularly recurring seasons, is such that the stream can be used profitably for commercial purposes in the transportation of the products of the forest, mines, tillage of the soil, or other articles of commerce, the public has an easement of highway therein, which the riparian proprietors cannot in law unreasonably obstruct; but the stream must be of sufficient size to float, by the force of the current, and without the aid of persons traveling upon the banks, crafts and rafts sufficiently large to make the business profitable, and it is not sufficient that loose logs or lumber can be floated down the stream when at flood; for streams of that

Miller v. State.

character are not subject to the public servitude, but are private property, absolutely and exclusively owned by the riparian proprietors.    (*Post, pp.* 303-305.)

Cases cited and approved:    Stuart v. Clark, 2 Swan, 17; Sigler v. State, 7 Bax., 496; Irwin v. Brown, 3 Shannon's Cases, 310; Allison v. Davidson, 39 S. W., 905, 908, 909.

5. **SAME.    Respective rights of riparian proprietors and the public in streams not navigable in the legal sense, but navigable for the floatage of crafts and rafts of logs.**

The public easement for the floatage of crafts and rafts of logs in streams not navigable in the legal sense is not an absolute and unqualified right of way, but is subject to the rights of the riparian owners, including a reasonable use for power; for the riparian proprietors have rights in such streams as valuable and sacred as that of the public, and these respective rights of the public and the riparian proprietors must be reconciled and so used and exercised as not unreasonably to interfere with and obstruct each other, so that both can be enjoyed and neither be unnecessarily or unreasonably obstructed or destroyed; and the public, in exercising its rights in it, must do so with unusual care not to interfere with those of the riparian proprietors. (*Post, pp.* 305-310.)

Cases cited and approved:    Gaston v. Mace, 33 W. Va., 14; Burke Co. v. Lumber Co., 116 N. C., 731; Ward v. Greenville, 32 Can. S. C., 510; Pearson v. Rolfe, 76 Me., 380; Foster v. Searsport Spool & Block Co., 79 Me., 508; Lancey v. Clifford, 54 Me., 487; Blackman v. Mauldin, 164 Ala., 337.

6. **SAME.    In prosecution against a riparian proprietor for obstructing a stream, the court should charge the jury concerning the respective and reciprocal rights of such proprietor and the public in a stream navigable only for the floatage of rafts, when.**

In the trial of a case under an indictment against a riparian proprietor for obstructing the navigation of a stream by the erec-

tion and maintenance of a milldam across the same, where the evidence shows or tends to show that such stream is not navigable in the legal sense, but only navigable for the floatage of rafts of logs during floods, the trial judge should charge the jury concerning the respective and reciprocal rights of the public and the accused defendant as such riparian proprietor in the stream, substantially as defined in the preceding headnote. (*Post, p.* 311.)

7. SAME.   Evidence held insufficient to show unlawful obstruction of a stream navigable only for floatage of rafts.

The evidence is stated and held to be insufficient to show an unlawful obstruction of a stream navigable only for floating logs, by the erection and maintenance of a milldam by a riparian proprietor.   (*Post, pp.* 297, 298, 299, 310, 311.)

FROM PICKETT.

Appeal in error from the Criminal Court of Pickett County.—J. M. GARDENHIRE, Judge.

A. H. ROBERTS, for Miller.

ASSISTANT ATTORNEY-GENERAL FAW and S. M. TURNER, for State.

MR. CHIEF JUSTICE SHIELDS delivered the opinion of the Court.

The indictment in this case contains two counts.

The first charges that the plaintiff in error "did unlawfully obstruct the navigation of the main channel

of a navigable stream, viz., Wolf river, at a place gener-
ally known as 'Miller's Mill,' in the Fourth civil district
of Pickett county, by erecting a dam in and across the
same."

The second count charges that the plaintiff in error
"did unlawfully obstruct Wolf river, a navigable stream,
at a place in the Fourth civil district of Pickett county
known as 'Miller's Mill,' the same being being a public
highway for the transportation of large amounts of logs
and lumber, by erecting and maintaining in and across
said stream a dam, which obstructs navigation and is
hurtful and injurious to the people generally, render-
ing passage along such stream for rafts and lumber dan-
gerous and inconvenient to the public."

There was a trial, and a general verdict of guilty, and
from the judgment of the court thereon the plaintiff in
error has brought the case to this court for review.

There is little or no controversy abut the material facts
of this case. Wolf river is a narrow, crooked, rocky, and
swift stream something over fifty miles in length. In
its ordinary condition, and with the exception of a few
days each year, when swollen by heavy rains, it is for the
most part shallow, having numerous shoals, where it is
ofttimes less than eight inches deep, and cannot in the
ordinary state of its waters be navigated or used for
floatage, ascending or descending, for commercial pur-
poses. During the winter and spring months, as a result
of heavy and continuous rains for six or more hours, it
has tides or floods, lasting from twelve to thirty-six

hours, during which small rafts containing twenty-five to fifty logs can be floated from points some forty miles above its mouth. There are usually about six of these tides each year, and they can be relied upon to occur periodically with reasonable certainty. There is a large amount of valuable timber on and near this river, which can only reach the market by being floated down it in rafts upon these tides, and it has been used for this purpose for over thirty years; there now being floated down its waters each year from $50,000 to $75,000 worth of logs in rafts of the size mentioned.

The river also affords along its entire length much valuable water power, which is utilized by a number of valuable mills for grinding corn and wheat and sawing lumber on its banks, operated by this power; the waters of the river being collected and held by dams erected and maintained in and across the river for that purpose.

The plaintiff in error owns a valuable tract of land situated upon both sides of the river in Pickett county, upon which he has a valuable mill for manufacturing meal, flour, and lumber; the power being furnished by the waters of the river, accumulated in a dam, which he maintains in the river. These lands were granted to the predecessors in title of the plaintiff in error in 1792, and the mill and dam now operated and maintained by him have been so operated and maintained by the owners of the property for more than sixty years. It is a custom mill, and accommodates a large number of people in that section of the country.

Miller v. State.

John Elder, one of the former owners of this property, was indicted in the circuit court of Pickett county, in 1884, upon the same charge preferred against the plaintiff in error, for maintaining this dam, and upon his building and agreeing to maintain a "slope," composed of timbers resting upon the dam at one end in the bed of the river at the other, for the waters to flow over, of sufficient width to accommodate rafts, the prosecution was dismissed. This "slope" has been maintained since that date, and furnishes a reasonably safe and convenient means by which rafts may be floated over the dam during tides in the river. Arranged in this way, the dam is not a much greater obstruction to floating rafts down the stream than exists from natural causes in other places.

The description here given of the river applies to it at the dam of the plaintiff in error and above that point. There is only one instance of a flatboat or barge being floated down the river, and this occurred many years ago. The preponderance of evidence clearly shows that the stream can only be used profitably for commercial purposes for floating loose logs and small rafts, at regular, recurrent periods, some six times each year, each period lasting from twelve to thirty-six hours, dependent upon the quantity and duration of the fall of rain.

The questions to be determined upon these facts are whether or not Wolf river is a navigable stream, as averred in the first count of the indictment; and, if not, whether it is a highway for transportation of commerce,

the public has the right to have kept open and unobstructed for its use in floating logs and rafts.

For the State, it is insisted that these questions are concluded by three acts of the general assembly—chapter 39, Acts of 1837-38, chapter 165, Acts of 1879, and chapter 118, Acts of 1893—declaring Wolf river navigable for rafts and flatboats from its mouth to points considerably above the dam of the plaintiff in error.

This contention cannot be sustained. The general assembly cannot arbitrarily declare a stream to be navigable. Whether a fresh water stream is navigable is always a question of fact. *Railroad* v. *Ferguson,* 105 Tenn., 552, 59 S. W., 343, 80 Am. St. Rep., 908; *Griffith* v. *Holman,* 23 Wash., 347, 63 Pac., 239, 54 L. R. A., 178, 83 Am. St. Rep., 821; Farnham's Waters and Water Rights, section 24.

If Wolf river is not in fact navigable, all these acts are violative of article 1, section 21, of our constitution, ordaining that private property shall not be taken or applied to public use without the consent of the owner, through his representatives, and just compensation being made.

The lands upon which the dam of the plaintiff in error is located were granted previous to the enactment of these statutes, and if Wolf river be not a navigable stream in a legal or technical sense the owner—the riparian proprietor—has title to the banks and the bed of the stream and the right to use his property for the purposes for which it is suitable. The statutes declaring the stream navigable and a public highway would, if valid,

deprive him of this use without compensation.   There could not be a clearer case of violation of the constitutional provisions stated.   This is in substance held in *Stuart* v. *Clark's Lessees,* 2 Swan, 17, 58 Am. Dec., 49.

It has been repeatedly so adjudged by the courts of other States having similar constitutional provisions. *Murray* v. *Preston,* 106 Ky., 561, 50 S. W., 1095, 90 Am. St. Rep., 232; *People* v. *Elk River Mill Co.,* 107 Cal., 221, 40 Pac., 531, 48 Am. St. Rep., 125; *Bayzer* v. *McMillan Mill* Co., 105 Ala., 395, 16 South., 923, 53 Am. St. Rep., 133; *Walker* v. *Board of Public Works,* 16 Ohio, 540; *State* v. *Pool,* 74 N. C., 402; *Morgan* v. *King,* 35 N. Y., 454, 91 Am. Dec., 58; *Partridge* v. *Eaton,* 63 N. Y., 482; *Barclay R. & Coal Co.* v. *Ingham,* 36 Pa., 194; *Allen* v. *Weber,* 80 Wis., 531, 50 N. W., 514, 14 L. R. A., 361, 27 Am. St. Rep., 51; Cooley's Const. Lim., 862, 863; Farnham's Waters and Water Rights, sections 24, 77.

We are also of the opinion that Wolf river is not a navigable stream within the sense of the laws of Tennessee.   The common law rule, that all waters in which the tide ebbs and flows are navigable, was held in *Elder* v. *Burrus,* 6 Humph., 358, to be inapplicable to conditions in this State, as there are no such waters within its boundaries; and the rule of the civil law, that rivers capable of being navigated or navigable in the common sense of the term, was adopted and held to be applicable to all our rivers coming within that definition.   This case has been frequently followed by this court, and the rule there announced is now the settled law of this State.

*Stuart* v. *Clark's Lessees,* 2 Swan, 17, 58 Am. Dec., 49; *Sigler* v. *State,* 7 Baxt., 496; *Holbert* v. *Edens,* 5 Lea, 204, 40 Am. Rep., 26; *Webster* v. *Harris,* 111 Tenn., 676, 69 S. W., 782, 59 L. R. A., 324.

Judge McKinney, in *Stuart* v. *Clark's Lessees,* supra, after discussing the subject fully, defines a navigable stream to be "a river capable, in the ordinary state of water, of navigation, ascending or descending, by vessels; that is, such vessels as are employed in the ordinary purposes of commerce, whether foreign or inland, and whether steam or sail vessels."

In *Holbert* v. *Edens,* supra, it is said: "A stream is navigable, in a legal sense, when it is capable in the ordinary stage of water of being navigated, both ascending and descending, by such vessels as are usually employed for purposes of commerce."

And in the last case upon the subject, *Webster* v. *Harris,* supra, it is said: "The test of a navigable stream is whether, in the ordinary state of water, it has capacity and suitability for the usual purposes of navigation, ascending or descending, by vessels such as are employed in the ordinary purposes of commerce, whether foreign or inland, and whether steam or sail vessels."

Wolf river does not come within these definitions of a navigable stream. It cannot be navigated profitably for commercial purposes ascending at any time, and can only be used descending for the transportation of logs and rafts for short periods of time, when swollen with rains, ten or twelve days in each year.

The remaining question, then, is whether this stream is a public highway, which the public has the right to use for transportation purposes, and whether the plaintiff in error, by the maintenance of his dam across the same, is unlawfully obstructing it.

While the beds of all streams not navigable in the legal sense belong to the riparian proprietors and are private property, yet if in its natural state the volume of a stream, whether ordinary or when swollen by rains, at certain periods of the year occurring with reasonable certainty, is such that the stream can be used profitably for commercial purposes in the transportation of the products of the forest, mines, tillage of the soil, or other articles of commerce, the public has an easement of highway therein, and this easement cannot be unreasonably obstructed by the riparian proprietors.

In *Stuart* v. *Clark's Lessees,* supra, upon this subject, it is said:

"Having considered this case upon the principles of law involved in it, rather than upon the facts, we do not feel it incumbent upon us to express any opinion as to the character of the Nolachucky river—whether navigable or otherwise. This question, however, upon the principles herein laid down, will be of no difficult solution.

"Neither have we deemed it material to notice particularly Acts of 1799, ch. 35, and other subsequent acts of like import, declaring that the navigation of Nolachucky and certain other rivers 'shall remain free and open,' and

affixing a penalty for any obstruction thereof. We suppose that legislation of this character was neither designed to have, nor can be allowed to have, any effect whatever upon the rights of the riparian proprietors. More especially can it have no such effect upon rights acquired prior to the date of the earliest statute upon the subject. *But these acts, so far as they provide that the rivers shall remain open and free for purposes of navigation, are merely declaratory of the common law, as has already been shown.*"

That case really involved the title to the land covered by the waters of Nolachucky river as between two adjoining proprietors, and not the respective rights of the public desiring to navigate the river and a riparian proprietor, and the court does not, therefore, undertake to define the latter rights fully.

In *Sigler* v. *State,* 7 Baxt., 496, this court quoted with approval from Angell on Highways as follows, viz.:

"The ebb and flow is not the only test, nor is the public easement always formed upon usage or custom. The test is whether there is in the stream capacity for use for the purpose of transportation valuable to the public; and in this view it is not necessary that the stream should have a capacity for floatage at all seasons of the year, nor that it should be available for use against the current as well as with it. If, in its natural state and with its ordinary volume of water, either constantly or at regularly recurring seasons, it has such capacity that it is valuable to the public, it is sufficient."

This easement, however, does not extend to all streams in this State. The stream must be of sufficient size to float, by the force of the current, and without the aid of persons traveling upon the banks, craft and rafts of sufficient size to make the business profitable. It is not sufficient that loose logs or lumber can be floated down it when at flood. Streams of that character are not subject to the public servitude, but are private property. *Allison* v. *Davidson*, 39 S. W., 905, 908, 909; *Irwin* v. *Brown*, 3 Shan. Cas., 310.

We think that Wolf river is such a stream that the public has an easement in, and the right to use, its waters for floatage at such periods as this right can be profitably exercised in the natural state of the stream. This easement, however, is not an absolute and unqualified right of way. The riparian proprietors also have rights in such streams as valuable as that of the public, and these respective rights of the public and the riparian proprietors must be so used and exercised as not to unreasonably interfere with and obstruct each other.

The evidence in this case demonstrates that the water power furnished by the river is very valuable, and doubtless in many instances the only value inhering in the lands through which it flows, and that in the near future this value will greatly exceed the value of the use of the river for floating logs and rafts, which articles of commerce will, in the course of time, become exhausted.

The value of the natural water powers of the country

124 Tenn.—20

for manufacturing purposes is constantly increasing, and is difficult to overestimate. The public is as much interested in the conservation of this class of property as it is in the protection of highways in streams. The policy of this State has been, and is now, to encourage the building of mills and the promotion of other manufacturing enterprises, for the operation of which these natural forces are of great value, and may be absolutely necessary. Public policy demands that these interests be reconciled, so that both can be enjoyed and neither be unnecessarily or unreasonably obstructed or destroyed, and just regard must be had in all such cases to the rights of the riparian proprietors. This is the view that has been taken of this question in a number of States where conditions are similar to those in this State, and we believe it to be just and sound.

Mr. Farnham, in his valuable work on Waters and Water Rights (section 29), says:

"When it is said that the right of the public is paramount, nothing more is meant than that the riparian owner can do nothing to close the highway. He cannot divert the water from the stream, nor consume it so as to defeat the possibility of navigation; nor can he place any insuperable obstructions in the stream. Conversely, the right of public navigation is not such as to destroy the rights of the riparian owner. The right cannot be exercised to the unnecessary or wanton destruction of private rights, or so as to deprive the riparian proprietors of the use of the stream for legitimate purposes

which will not unreasonably interfere with the right of navigation. The navigation right is the right of passage merely, and so long as the right is preserved without unreasonable impairment, the riparian owner may abridge the stream, or use water therefrom, or even throw a dam across it, if he makes provision for the right of passage. The rights may be said to be reciprocal, each modifying the other, each to be used so as not to interfere unreasonably with the other right. The riparian owner is not bound to provide a better passage than is furnished by nature. He may even abridge the rights to some extent, if he leaves a convenient passageway."

This text is well sustained by adjudged cases of courts of last resort. *Gaston* v. *Mace,* 33 W. Va., 14, 10 S. E., 60, 5 L. R. A., 392, 25 Am. St. Rep., 854, 855; *Com'rs of Burke Co.* v. *Lumber Co.,* 116 N. C., 731, 21 S. E., 941, 47 Am. St. Rep., 838; *Ward* v. *Greenville Township,* 32 Can. S. C., 510; *Pearson* v. *Rolfe,* 76 Me., 380; *Foster* v. *Searsport Spool & Block Co.,* 79 Me., 508, 11 Atl., 273; *Lancey* v. *Clifford,* 54 Me., 487, 92 Am. Dec., 561.

In this last case, Dickerson, Judge, speaking for the court, says:

"Reasonable use is the touchstone for determining the rights of the respective parties. Thus, in considering this subject, we find the public right of way over the stream, and the landowner's right of soil under it, and his right to use its flow. The rights of both these parties are necessary for the purposes of commerce, agricul-

ture, and manufactures. The products of the forest would be of little value, if the riparian proprietors have no right to raise the water by dams, and erect mills for the manufacture of these products into lumber. The right to use the water of such streams for milling purposes is as necessary as the right of transportation. Indeed, it is this consideration that oftentimes imparts the chief value to the estate of the riparian proprietors, and without which it would have no value whatever in many instances. Each right is the handmaid of civilization; and neither can be exercised without in some degree impairing the other. This conflict of rights, therefore, must be reconciled. The common law, in its wonderful adaptation to the vicissitudes of human affairs, and to promote the comfort and conveniences of men, as unfolded in the progress of society, furnishes a solution of this difficulty by allowing the owner of the soil, over which a floatable stream which is not technically navigable passes, to build a dam across it, and erect a mill thereon, provided he furnishes a convenient and suitable sluice or passageway for the public by or through his erections. In this way both these rights may be exercised without substantial prejudice or inconvenience.

"We therefore hold that, on a stream which is valuable for the floatage of loose logs, but not for navigation in any more enlarged sense, it cannot be said that the right of such floatage is so far paramount to the use of the water for machinery and other valuable purposes as to require the sacrifice of the latter to the former."

The latest case in which the question is involved that has been called to our attention is that of *Blackman* v. *Mauldin,* recently decided by the supreme court of Alabama, and to be found reported in 164 Ala., 337, 51 South., 23, 27 L. R. A. (N. S.), 670. There, after holding that the public has an easement of a right of way for floatage purposes in nonnavigable streams of the character of Wolf river, it is said:

"But we are not disposed to accord to the public the same unqualified right to the use of streams valuable only for the floatage of loose logs and timber, as in the case of streams navigable in the true sense of that word. The right of floatage must be preserved to the extent which the experience of those who have utilized the stream for that purpose has shown to be practicable and profitable, and to meet the probable future needs of the country which it serves. Its water may not be diverted nor consumed, so as to render impossible its customary use; nor must insuperable obstacles be put across the stream. But a just regard for the rights of the owners of the beds and banks of the streams capable only of such limited use would require that their situation be considered in judicial decision. Such consideration cannot be unreasonable in the circumstances of this case, because, during considerable parts of the year, the stream is not capable of floatage, and at such times it would be unreasonable to deprive the owner of the opportunity to utilize the water power of the stream, or to make such other uses of his property as will not unreasonably inter-

fere with those uses of the stream which the public has and will hereafter make it. Gristmills, sawmills, and gins serve also a public purpose."

While we think that the preponderance of the evidence in this record places Wolf river in that class of streams in which the public has the right of floatage for the transportation of sawlogs and rafts, yet, under the rule in this State as announced in the cases of *Irwin* v. *Brown,* supra, and *Allison* v. *Davidson,* supra, it is not more than in that class, and the public, in exercising its rights in it, must do so with unusual care not to interfere with those of the riparian proprietors. The great weight of the evidence clearly establishes that the dam of the plaintiff in error, as maintained by him, is not an unreasonable, and therefore not an unlawful, obstruction to the navigation of the stream. It has been there for sixty years, and the "slope," built for the accommodation and protection of rafts in crossing it, has been maintained for about twenty-five years. During all this time rafts have gone over the dam upon this "slope" without greater inconvenience or danger to the logs and those in charge of them than ordinarily incident to the navigation of the river. The dam does not constitute a greater obstruction, provided, as it is, with the "slope" for the passage of rafts, than the plaintiff in error, as riparian proprietor, has the right to build and maintain upon his own property. It is not an obstruction of a navigable stream, either under the common law or our statute; for Wolf river is not navigable within the sense of the law.

Miller v. State.

The trial judge, upon the evidence introduced by the State, should have so instructed the jury. He should have further charged the jury concerning the respective and reciprocal rights of the public and those of plaintiff in error as riparian proprietor in the stream. It is, we think, reasonably clear that, had this been done, the verdict of the jury would have been in favor of the plaintiff in error, as the preponderance of the evidence is against the verdict that was found, and in favor of his innocence.

For these reasons, the judgment of the criminal court is reversed, and the case remanded for a new trial.