IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 19, 2013 Session

## JOHN SHELL and CONNIE SHELL v. SHERRI COLE WILLIAMS v. RICK SHELL

**Direct Appeal from the Circuit Court for Rutherford County**
**No. 62598      Royce Taylor, Judge**

_____

**No. M2013-00711-COA-R3-CV - Filed January 14, 2014**

_____

The issues in this case involve the proper use and alleged interference with an easement created by express grant. The trial court concluded that the holders of the easement could use the easement for recreational purposes and that the servient landowner had interfered with the use of the easement by planting trees and placing boulders within the easement. We reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Brad W. Hornsby and Heather G. Parker, Murfreesboro, Tennessee, for the appellant, Sherri Cole Williams.

Mathew R. Zenner and Malcolm L. McCune, Brentwood, Tennessee, for the appellees, John Shell and Connie Shell.

**OPINION**

**Background**

This appeal involves a dispute over the use of an easement. The land containing the easement was originally an undivided parcel. The land was later subdivided into eight separate parcels, two parcels wide and four parcels deep. It is undisputed that the back six parcels have no road access. It is also undisputed that the parcels are subject to an easement that allows the back parcels access to the road. The language of the original deeds

subdividing the land provides for an easement that is "40 feet in width and located across the south lines of lots Nos. 1,3,5, and 7 and the other one-half across the north lines of lots Nos. 2, 4, 6, and 8. It is understood that this right of way is for the use of all said lots, and shall pass with all conveyances of any of the same." Sometime after the easement was created, a narrow gravel driveway was added to the easement. The driveway does not span the entire forty-foot width of the easement.

Petitioners/Appellees John Shell and Connie Shell ("the Shells") own a back parcel of the subdivided land. Along with Third Party Defendant/Appellee Rick Shell (collectively, "Appellees"), the Appellees own the two parcels farthest from the road. Respondent/Appellant Sherri Cole (now Williams)[1] owns a parcel closer to the road than the Appellees (Ms. Cole's property is directly in front of Rick Shell's parcel). Thus, twenty feet of the easement's width is on Ms. Cole's property.

Sometime after acquiring her parcel, Ms. Cole planted trees and placed boulders[2] on her property within the easement. The trees and boulders did not impair use of the gravel driveway. However, the Shells contended that the trees and boulders impeded their ability to use the easement for recreational purposes, including riding horses and driving all-terrain vehicles.

On April 29, 2011, the Shells filed a Petition for a Declaratory Judgment and for Other Relief, arguing that the boulders and trees impaired the use of the easement. Specifically, the Shells asked that the trial court enter a Declaratory Judgment "decreeing that [Ms. Cole] has wrongfully interfered with [the Shell's] peaceful use of their right of way."[3] The Shells

_____

[1]The Appellant changed her name to add the additional surname of Williams during the pendency of this case. Throughout the proceedings in the trial court, both the parties, and the trial court in its order, refer to the Appellant as Ms. Cole. For purposes of clarity, we will continue to refer to the Appellant as Ms. Cole.

[2] In the trial court, Ms. Cole disputed that the alleged obstructions were, in fact, boulders. Instead, Ms. Cole characterized the alleged obstructions as "small rocks." The trial court, however, found that the alleged obstructions were "boulders." Although Ms. Cole argues that the trial court erred in finding that the boulders actually obstructed any legitimate use of the easement, she does not appear to argue that the trial court erred in finding that the alleged obstructions were, in fact, boulders. We will, therefore, refer to the alleged obstructions as boulders for purposes of this appeal.

[3] The Shells also raised an allegation that Ms. Cole in moving significant boulders from her property, had caused run-off flooding on the Shells' property. The Shells appear to have abandoned this claim, however. The trial court did not grant the Shells any relief regarding this allegation in its final order. The parties also later entered an agreed order dismissing all remaining issues. Thus, this allegation is not at issue
(continued...)

sought a Declaratory Judgment, damages, and attorney's fees as a result of the alleged interference.

Ms. Cole filed an Answer and Counter-Complaint, denying that she had interfered with any legitimate use of the easement. Specifically, Ms. Cole requested that the trial court enter a Declaratory Judgment that "any ingress, egress, and other recreational activities need to take place on the gravel driveway contained within the easement that has been in existence for many years and can surely meet the needs of [the Shells] and any other individual." At Ms. Cole's request, Rick Shell, who owns the other back parcel of the subdivided land, was also included in the lawsuit as a third-party defendant.

Later, on July 27, 2012, Ms. Cole filed a Motion to Amend the Pleadings to add an additional Counter-Claim.[4] The Counter-Claim alleged that Ms. Cole held an easement on the Appellees' property and that the Appellees had interfered with her use and enjoyment of that easement. The Appellees did not oppose the Motion to Amend, and the trial court granted Ms. Cole's request on September 12, 2012.

The trial court held a hearing on September 24, 2012, at which time the parties submitted the case to the trial court on the pleadings, pretrial briefs, arguments of counsel, stipulations, and exhibits. The exhibits included the original deeds subdividing the property, a prior survey of the property, photographs of the easement, and photographs of individuals riding horses within the easement, between the boulders and the trees placed by Ms. Cole. The trial court entered a Memorandum Opinion on October 31, 2012 containing detailed and thorough findings of fact and conclusions of law. The trial court found that "it is reasonable that all parties could use the easement for extracurricular activities, including walking, riding horses, and all terrain vehicles." The Court further found that by placing the trees and boulders in the easement, Ms. Cole had interfered with the Appellees' use and enjoyment of

_____

[3](...continued)
in this appeal.

[4] By way of edification, an "amended" complaint and an "amendment to" a complaint are two different things. An "amended complaint" is complete in itself without adoption or reference to original; as such, it supersedes and destroys the original complaint as a pleading. *McBurney v. Aldrich*, 816 S.W.2d 30 (Tenn. Ct. App.1991). An "amendment to" a complaint merely modifies the existing complaint, which remains before the trial court as modified. *Id*. In this case, although Ms. Cole's pleading does not specifically say that it serves as an amendment to her original counter-complaint, we perceive Ms. Cole's intention was not to supplant her earlier pleading with an amended complaint. *See Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App.1992) (noting that we look to the substance of a pleading, rather than its form, to determine the filer's intent). Rather, Ms. Cole merely intended the intercalation of this additional claim among her previous claims. Thus, the original allegations in Ms. Cole's Answer and Counter-Complaint remain intact.

the property. The trial court therefore ruled that the Appellees had the right to the remove the obstructions. Specifically, the trial court's order states:

> The parties have stipulated to the following undisputed facts. The lots in question were originally owned undivided by Mrs. Emma Victory Neely. When the property was later divided into eight lots, only lots 1 and 2 had access to Lamar Road. The remaining six lots do not have access to a roadway and, therefore, an easement was created and granted in the deed transferring ownership of each lot. The lots are stacked in four rows of two lots, with the easement being down the middle between the two columns. The [Shells] own lot number 8, while the third party defendant Rick Shell owns lot number 7, with these lots being in the top row [i.e, furthest from Lamar Road]. Lot number 5 is owned by respondent Ms. Cole and is situated directly under lot number 7.
>
> The original grant of lots 4 and 7 contained in Book 202, Page 404 or the Register of Deeds Office for Rutherford County, Tennessee, contains the following language granting an easement:
>
>> IT IS UNDERSTOOD AND AGREED that there is hereby granted an easement or right of way leading from the southeast corner of Tract #7 of the above mentioned survey in a westward direction through the entire tract owned by grantor. This easement is 40 feet in width, and located so that one-half thereof is located across the south lines of lots Nos. 1, 3, 5, 7 and the other one-half across the north lines of lots Nos. 2, 4,6, and 8. It is understood that this right-of-way is for the use of all said lots, and shall pass with all conveyances of any of the same.
>
> * * *
>
> The parties in this case agree the easement is used for ingress and egress.
>
> * * *

In this case, there has been no limitation or restrictions of the uses in any of the deeds. The parties all own large lots of real property, consisting of approximately 2 acres each, wherein horses and other pets reside and therefore, it is reasonable that all parties could use the easement for extracurricular activities, including walking riding horses and all terrain vehicles. However, the activities must take place within the forty (40) feet of the easement and not cause damage to the land outside the easement. . . . [Ms. Cole] shall not interfere with the Shells['] enjoyment of the easement, including scaring horses and otherwise harassing them, as long as they remain within the boundary of the easement.

* * *

[T]his Court finds the easement is not limited to ingress and egress of automobiles, as claimed by the respondent. Further, the right of way is not limited to the gravel road; it consists of the entire forty (40) feet originally granted. The trees and boulders are not necessary to the enjoyment of her property . . . . By planting trees and boulders within the easement, the respondent has interfered with the other landowners['] use and enjoyment of the easement. [The Shells] have the right to remove trees, boulders or other obstacles within the easement which interfere with their use of the easement.

The trial court also denied Ms. Cole's Counter-Claim regarding the Appellees alleged interference with her right to use the easement on their property.[5]

Ms. Cole filed a Motion to Alter or Amend the trial court's judgement, alleging that the easement was solely for ingress and egress use, and therefore, the use of the easement was not impaired by the obstructions. The trial court denied the Motion by order of January 7, 2013. Ms. Cole also filed a Motion to Stay the Judgment pending appeal. An agreed order was later entered on February 5, 2012; the order disposed of all remaining issues, stating: "[t]he parties have agreed to mutually dismiss with prejudice all remaining issues outside of those encompassed in the October 31, 2012 Memorandum and Order." Accordingly, no stay

_____

[5] On appeal, Ms. Cole does not take issue with the trial court's decision to deny her Counter-Claim for interference against the Appellees.

-5-

on the judgment was ever entered and Ms. Cole then initiated this appeal.

## Issues Presented

Ms. Cole raises the following issues on appeal:

1. Whether the trial court erred in failing to limit the easement to the purpose for which it was created, specifically for ingress or egress only.
2. Whether the trial court erred in finding that the decorative trees and rocks interfered with the Appellees' reasonable use of the easement.
3. Whether the trial court erred in ruling that the Appellees could unilaterally determine what objects were "obstacles" and thereafter forcibly remove said "obstacles" from Ms. Cole's property.

## Standard of Review

This case was decided by the trial court, sitting without a jury. Accordingly, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. **Blair v. Brownson**, 197 S.W.3d 681, 684 (Tenn. 2006) (citing **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000)).

As an initial matter, we note that our review in this case is somewhat hampered by the paucity of evidence in the record. As previously discussed, the parties submitted this case to the trial court on the record without the benefit of any testimony, live or otherwise. In addition, the trial court noted that the case was being decided on the "pleadings, pretrial briefs, relevant law and hearing stipulations and arguments of counsel." However, neither the pretrial briefs, nor any stipulations are included in the record. In addition, the record contains no transcript evidencing the arguments of counsel. Thus, we turn to consider the issues presented in this case keeping these limitations in mind.

## Analysis

### I. Extent and Purpose of the Easement

Ms. Cole first argues that the trial court erred in finding that the Shell's recreational

use of the easement was reasonable. Specifically, Ms. Cole asks this Court to limit the use of the easement to the purpose for which it was created—ingress and egress. The Appellees, however, argue that to place such a limitation on the use of the easement would be to judicially reform the easement.

The issues in this case involve the interpretation and use of an easement. An easement is "an interest in property that confers on its holder a legally enforceable right to use another's property for a specific purpose." *Hall v. Pippin*, 984 S.W.2d 617, 620 (Tenn .Ct. App. 1998); *see also Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App.2000); *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996). Such an interest in land can be created in a number of ways: (1) by express grant, (2) by implication, and (3) by reservation. *Pevear*, 924 S.W.2d, at 115.

The easement in this case is undisputedly an express easement. "An express easement is a grant of an interest in land which must comply with the requirements of the statute of frauds at Tenn. Code Ann. § 29-2-101." *Smith v. Evans*, No. M2007-02855-COA-R3-CV, 2008 WL 3983117, at *2 (Tenn. Ct. App. Aug. 27, 2008) (citing *Cellco P'ship v. Shelby County*, 172 S.W.3d 574, 593 (Tenn. Ct. App. 2005); *Mitchell v. Chance*, 149 S.W.3d 40, 47 (Tenn. Ct. App. 2004); *Nunnelly v. Southern Iron Co.*, 29 S.W. 361, 365–66 (Tenn.1895). "To create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license." *Smith v. Evans*, 2008 WL 3983117, at *2 (citing 25 Am.Jur.2d Easements and Licenses § 15 (2008); *Adcock v. Witcher*, 1995 WL 675852 at *2 (Tenn. Ct. App. Nov. 15, 1995)). "The scope of such an easement is set forth in express terms, either in the granting documents or as matter of incorporation and legal construction of terms of relevant documents . . . [.]" *Smith v. Evans*, 2008 WL 3983117, at *2 (citing 25 Am.Jur.2d Easements and Licenses § 15).

"In the construction of instruments creating easements, it is the duty of the court to ascertain and give effect to the intention of the parties." *Burchfiel v. Gatlinburg Airport Authority*, No. E2005-02023-COA-R3-CV, 2006 WL 3421282, at *3 (Tenn. Ct. App. 2006) (citing 28A C.J.S. Easements § 57 (1996)). The intention of the parties with regard to the purpose and scope of an easement conveyed by express grant is determined by the language of the deed. *See Foshee v. Brigman*, 129 S.W.2d 207, 208 (Tenn.1939) ("If the easement is claimed under a grant, the extent of the easement is determined by the language of the grant."). "[T]he easement holder's use of the easement must be confined to the purpose stated in the grant of the easement." *Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n*, No. M2005-01193-COA-R3-CV, 2006 WL 2449909, at *3 (Tenn. Ct. App. Aug. 21, 2006).

The Appellees, like the trial court, rely on the Tennessee Court of Appeals Opinion in *Cellco Partnership v. Shelby County*, 172 S.W.3d 574 (Tenn. Ct. App. 2005). The situation in *Cellco Partnership* involved the issue of whether an easement holder could assign its right to the use of an easement to a third-party. In determining that an assignment was appropriate in that particular case, the Court noted that:

> While a private way may not be used by the public generally or by any one having no better right than the general public, the owner of such a way is not limited to its use by himself, but it may be used by his family, by pets, by tenants occupying the land with his authority, by his servants, agents, or employees in conducting his business, by persons transacting business with him, or by guests for social purposes, except in cases where the right of way is created by express agreement and the user is restricted by the terms of the agreement.

*Cellco P'ship*, 172 S.W.3d at 597 (citing 28A C.J.S. Easements § 164 (1996)). The trial court in this case relied on the above language in holding that the Appellees' recreational use of the easement is appropriate because there is no express restriction on the use of the easement and the use does not unduly interfere with or burden Ms. Cole's reasonable enjoyment of her property.

In *Cellco Partnership*, the Court of Appeals concluded that because nothing in the specific language of the easement grant stated that the easement was non-exclusive to the original holder, the right to use the easement could be assigned to a third-party. *Cellco P'ship*, 172 S.W.3d at 598. The issue in *Cellco Partnership* was not, as here, whether an easement that states no express purpose is limited to the purpose for which it was created. Indeed, the Court of Appeals further concluded that the third party's use of the easement was limited to using the easement "within the purposes for which the easement was created." *Id.* (citing *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002)). Thus, any family, pets, tenants, employees, agents, or guests that are permitted to use a dominant landowner's easement are still limited to use that comports with the purpose for which the easement was created. Because there was no dispute as to the purpose of the easement in *Cellco Partnership*, the Court was not required to determine the appropriate uses of the easement. The narrow holding in *Cellco Partnership* regarding the use of an easement by a third-party is, therefore, inapposite to the question presented in this case.

This Court's Opinion in *Burchfiel v. Gatlinburg Airport Authority*, 2006 WL 3421282 (Tenn. Ct. App. 2006), presents a more analogous factual situation to the case-at-bar. In *Burchfiel*, the plaintiffs, the servient landowners, filed a trespass action against the

defendants for construction of a sign in an easement held by the defendants. The plaintiffs argued that the construction of the sign was not an authorized use of the easement because the easement was granted expressly for "ingress and egress" purposes. The defendants argued that the construction of the sign was a reasonable extension of the use of their easement and that it did not unduly burden the plaintiffs' use of their property. The trial court granted relief to the plaintiffs and the defendant appealed. The Court of Appeals affirmed the trial court's decision that the construction of a sign within the easement was not an authorized use of the easement. The Court explained:

> "[T]he easement holder's use of the easement must be confined to the purpose stated in the grant of the easement." ***Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n.***, No. M2005-01193-COA-R3-CV, 2006 WL 2449909, at *3 (Tenn. Ct. App. M.S., filed August 21, 2006). The case of ***Adams v. Winnett***, 156 S.W.2d 353 (Tenn. Ct. App. 1941), provides the following additional guidance for determining whether an easement holder's use of an easement is proper:

>> "The use of an easement must be confined strictly to the purposes for which it was granted or reserved. A principle which underlines the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden."

>> * * *

>> "It may be said in general that if an easement is put to any use inconsistent with the purpose for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use."

>> * * *

>> "Where [an] easement is not specifically defined, it need be only such as is reasonably necessary and convenient for [the] purpose for which it was created."

*Burchfiel*, 2006 WL 3421282, at \*3 (quoting *Adams*, 156 S .W.2d at 57–58). Because the easement in *Burchfiel* expressly stated that its purpose was for ingress and egress, the construction of the sign was a "use inconsistent with the purpose for which [the easement] was granted." *Id.* The defendants argued that "the construction of the sign was an authorized use of the right-of-way because the deed did not expressly prohibit the construction of such a sign." Essentially, the defendants argued that an "easement holder can use the easement in any 'reasonably related' way, unless the deed expressly states that the easement holder cannot use the easement in that way." *Burchfiel*, 2006 WL 3421282, at \*4. The Court of Appeals rejected this argument, explaining:

> This argument is flawed. It erroneously assumes that the construction of the sign at issue is "reasonably related" to the defendants' use of the right-of-way. The construction of the sign in this case is not a reasonable use of an easement granted specifically for ingress and egress purposes.

*Id.* Thus, the defendants were limited to using the easement solely for the purpose for which it was created—ingress and egress.

The *Burchfiel* defendants also argued that the construction of the sign was within their rights as the holder of the dominant estate because there was no evidence that their use of the easement had overburdened the plaintiff's servient estate. Specifically, the defendants argued that "there was no evidence that the sign interfered with the plaintiffs' use of the property or that the sign "materially increased" the burden upon the plaintiffs' property." *Id.* at \*5. The Court, likewise, rejected this argument:

> We hold that such findings with respect to the plaintiffs' use and burden are unnecessary. The construction of the sign exceeded the authorized uses of the right-of-way; thus, the [defendants] trespassed upon the plaintiffs' property in erecting the sign. *See Adams*, 156 S.W.2d at 357–58. The trial court, therefore, had the right to order the removal of the sign.

*Burchfiel*, 2006 WL 3421282, at \*5. The Court, accordingly, affirmed the trial court's ruling that the construction of the sign was a trespass onto the plaintiffs' property, despite the fact that the sign was undisputedly placed within the easement.

We find the *Burchfiel* decision instructive in this case. Much like in *Burchfiel*, the question in this case involves whether a use of an easement is authorized. Because the construction of the sign did not comport with the purpose of the easement, the Court affirmed

-10-

the trial court's ruling that such use of the easement was an unauthorized trespass onto the property of the servient estate. Although the purpose of the easement in ***Burchfiel*** was expressly stated in the granting document, the purpose of the easement in this case is no less clear. Indeed, according to the trial court, the parties agreed that the purpose of the easement was for ingress and egress. The Appellees have not appealed from that finding. Further, the lack of limiting language in a granting document does not, *ipso facto*, lead to a conclusion that the easement may be used for any purpose that does not interfere with the servient estate's rights. Instead, as discussed in ***Burchfiel***, "Where [an] easement is not specifically defined, it need be only such as is reasonably necessary and convenient for [the] purpose for which it was created." ***Burchfiel***, 2006 WL 3421282, at *3. Here, the easement contains no specific language regarding its purpose. However, the parties agreement, as well as the limited evidence in the record, support a finding that the easement was created in order to provide the back parcels ingress and egress to Lamar Road.

The Appellees , however, argue that ***Burchfiel*** is not analogous because the easement at issue in ***Burchfiel*** contained express language limiting its use to ingress and egress. Essentially, the Appellees argue that because the easement at issue does not contain an express provision that the easement is limited to ingress and egress, they are not limited in their use of the easement, "provided the reasonable use take place within the 40 feet of the easement." The Appellees argue that to place an ingress and egress limitation on the Appellees ' use of the easement would be to impermissibly "reform the deed language." We respectfully disagree. As discussed above, the right to use an easement is limited to that which "is reasonably necessary and convenient for [the] purpose for which it was created," even if the easement's purpose is not specifically defined in the granting document. ***Burchfiel***, 2006 WL 3421282, at *3. Further, this Court explained in ***Shew v. Bawgus***, 227 S.W.3d 569 (Tenn. Ct. App. 2007) that the purpose of an easement is determined at an easement's creation. According to the ***Shew*** Court:

> [t]he range of permissible uses of ***any*** particular easement is in the first instance defined by the circumstances surrounding the creation of that easement; its use is limited to the purposes for which it was created." 28A C.J.S. Easements § 159 (1996).

*Id.* at 576 (citing ***Cellco P'ship***, 172 S.W.3d at 595) (emphasis added).Thus, in determining whether the use of ***any*** easement is permissible, courts must consider the purpose for which the easement was created, regardless of whether the purpose is stated or unstated.

Having concluded that the easement at issue is limited to ingress and egress purposes, we must conclude that the trial court erred in finding that the authorized use of the easement included use for "recreational purposes." Neither the trial court nor the Appellees

-11-

specifically define what is meant by "recreational purposes," but from the record, we glean that such purposes include riding horses and all-terrain vehicles along the easement outside the twenty-foot gravel driveway. We cannot, however, glean from the limited evidence in the record the proposed frequency or extent of such "recreational" use of the property. Under these circumstances, we conclude that because the purpose of easement is for ingress and egress, recreational use of the easement that involves more than mere ingress and egress from the road to the other parcels of land is not authorized.[6]

The Appellees argue, however, that regardless of the purpose for which the easement was created, nothing in the record supports a finding that their use of the easement interferes with the use and enjoyment of Ms. Cole's property, pointing to the trial court's finding that the "trees and boulders are not necessary to the enjoyment of [Ms. Cole's] property." Again, we respectfully disagree. The Court in **Burchfiel** held that consideration of the burden placed on the servient estate by an unauthorized use of an easement is immaterial. *See **Burchfiel***, 2006 WL 3421282, at \*6. Because the Appellees' use is inconsistent with the purposes of the easement at its creation, it is unauthorized. An unauthorized use is a trespass regardless of the burden it places on the servient estate. *Id.* The trial court's ruling that recreational use of the easement is authorized is, therefore, reversed.

## II. Interference with the Easement

Next, Ms. Cole argues that the trial court erred in finding that the trees and boulders within the easement obstructed the Appellees' legitimate use of the easement. The Shells filed this action seeking a Declaratory Judgment that the placement of the trees and boulders interfere with their use of the easement. Ms. Cole argued, in contrast, that the Appellees were limited to using the twenty-foot gravel road for ingress and egress, and that any obstructions placed in the easement outside of the gravel roadway were immaterial.

Just as the owners of the dominant estate have restrictions on their use of an easement, *see* discussion above, so too do owners of the servient estate. As recently discussed by this Court:

> [T]he owners of the land under and surrounding an easement
> also have restrictions on the use of their land:

---

[6] Ms. Cole does not ask this Court to limit the Appellees' ingress and egress by way of the easement to mere foot passage or automobile passage. Thus, we decline to opine as to whether the Appellees may use horses or all-terrain vehicles for purposes of ingress and egress to their property.

The owner of the servient estate, while he may use his property in any manner consistent with the existence of the easement, . . . cannot make any alterations in his property by which the enjoyment of the easement will be materially interfered with.

28A C.J.S. Easements § 175 (1996).

The owner of the servient estate has no legal right to interfere with an easement holder's enjoyment and use of the easement. *Charles v. Latham*, 2004 WL 1898261 (Tenn. Ct. App. Aug. 25, 2004) (citing *Cooper v. Polos*, 898 S.W.2d 237, 242 (Tenn. Ct. App.1995)).

Although the respective rights of the owners of the dominant and servient estates must be construed so as not to **unreasonably** interfere with each other, *Miller v. State*, 124 Tenn. 293, 137 S .W. 760, 35 L.R.A.N.S., 407 (1910), the owner of the dominant easement has **all the rights incident or necessary to proper enjoyment of the easement.** 25 Am.Jur.2d Easements & Licenses §§ 72–75. The use of the servient estate must be consistent with that of the dominant estate. *Brown v. Alabama Power Co.*, 275 Ala. 467, 156 So.2d 157 (1963).

*U.S. ex rel. and for Use of Tennessee Val. Authority v. Hughes*, 408 F.2d 619, 621(6th Cir.1969) (emphasis added).

In Tennessee, the rights of the owner of the easement are paramount to those of the landowner, at least to the extent of the easement. *Cox v. East Tennessee Natural Gas Co.*, 136 S.W.3d 626, 627–28 (Tenn. Ct. App. 2003); *Carroll v. Belcher*, 1999 WL 58597, at *3. The owner of the servient estate cannot take actions that unreasonably interfere with easement holder's rights under the easement, including any alterations in the landowner's property. *Cox*, 136 S.W.3d at 628 (citing *Carroll v. Belcher*, 1999 WL 58597, at *3).

*Rogers v. Roach*, 2012 WL 2337616, at *9 (Tenn. Ct. App. 2012).

As an initial matter, we note that the Appellees have the burden to prove that the trees and boulders were an impermissible interference with their legitimate use of the easement. Indeed, in order to prevail on a claim against a servient landowner for unreasonable interference with the use of an easement, the dominant landowner must show: (1) the "existence/creation of easement;" (2) "interference with the easement's use;" and (3) "actual damage to the easement holder's use." 20 Causes of Action 2d 177 (2002) (discussing the "Cause of Action for Servient Estate Owner's Unreasonable Interference with Easement of Way by Placement of Obstruction on Easement"). In addition, evidence, such as testimony, is required to establish the "unreasonable interference with the easement." *See* 20 Causes of Action 2d 177 (2002). There is no dispute in this case that the Appellees have a valid easement over Ms. Cole's property. Accordingly, the remaining questions that were resolved by the trial court were whether the trees and boulders placed in the easement unreasonably interfered with the Appellees' use of the easement, and whether the Appellees suffered damage as a result.

Generally, in cases involving the unreasonable interference with a dominant landowner's use of an easement, the question " is whether, under the specific facts presented, the [obstruction] is necessary to the use and enjoyment of the landowner's land and whether it does not unreasonably interfere with the easement holder's use of the right of way. *Roach*, 2012 WL 2337616, at *9 (citing *Reynaud v. Koehler*, 2005 WL 1868816, *2 (Tenn.Ct.App. Aug. 8, 2005)). The typical interference case involves the erection of fences or gates. In those cases, "an owner of land subject to a right-of-way easement may maintain gates, if necessary to his use and enjoyment and where such obstructions do not unreasonably interfere with the use of the way." *Cole v. Dych*, 535 S.W.2d 315, 320 (Tenn. 1976). Thus, placement of an obstruction in an easement is not sufficient to prevail in an action for interference; instead, the dominant landowner must show that the obstruction "unreasonably interfere[s]" with the use of the easement. *Id.*

The trial court concluded that the trees and boulders did constitute unreasonable interference with the Appellees' use of the easement, which caused damage to the Appellees' future ability to use the easement for recreational purposes.[7] Thus, the trial court entered a

---

[7] The Shells sought damages in the trial court for Ms. Cole's allegedly unreasonable interference with their use of the easement. This Court has previously held that damages are appropriate in unreasonable interference claims: "The type of injury that may be sustained from a wrongful interference with the easement, includes injury to the land itself and diminution of the easement holder's use and enjoyment of his own property, or the use of the easement." *Roach*, 2012 WL 2337616, at *12 (citing *Rector v. Halliburton*, No. M1999-02802-COA-R3-CV, 2003 WL 535924, *10 (Tenn. Ct. App. Feb. 26, 2003)). Although the trial
(continued...)

Declaratory Judgment in the Appellees' favor and ordered the trees and boulders removed from the easement. The trial court decided this matter simply on the pleadings, the stipulations of the parties, and the exhibits. No testimony, live or by deposition or affidavit, was considered by the trial court.

Having reviewed the limited evidence in this case, we must conclude that the evidence preponderates against the trial court's conclusion that the trees and boulders placed in the easement interfere with any legitimate use of the easement by the Appellees. Although we agree with the trial court that the dominant estate has the ability to use the entire width of the easement for authorized uses, *see **Roberson v. Kitchen***, 12 So. 3d 813 (Fla. Dist. Ct. App. 5th Dist. 2009) (finding that an easement was unambiguous and encompassed the entirety of the described tract); ***Stanton v. Strong***, 2012 ME 48, 40 A.3d 1013 (Me. 2012) ("If a grant 'expressly details its specific boundaries . . . the owner of the right of way is entitled to use the entire granted area, and is not limited to what is necessary or convenient.'") (citing ***Mill Pond Condo. Ass'n v. Manalio***, 910 A.2d 392, (Me. 2006)), nothing in the record suggests that the Appellees were prevented from engaging in any authorized activities as a result of the placement of the trees and boulders. In fact, photographs in the record show individuals using the easement notwithstanding the presence of the trees and boulders. Further, the Shells' original complaint for a Declaratory Judgment, which was never amended, contains no allegations that the placement of the trees and boulders interferes with their use of the easement, even for recreational purposes. Without some evidence that the trees and boulders actually interfere with the legitimate uses of the easement, the Appellees simply have not met their burden in this case. The trial court's ruling that the boulders and trees unreasonably interfere with the Appellees' use of the property, is therefore, reversed.

### III. Removal of Trees and Boulders

Ms. Cole next argues that the trial court erred in allowing the Appellees to remove the trees and boulders from the easement. As previously discussed, after the trial court ruled that Ms. Cole was obstructing legitimate recreational uses of the easement with the trees and boulders, the trial court ordered that the Appellees could remove the trees and boulders. Having determined that the recreational use of the easement was an erroneous over-broadening of the permitted uses of the easement and that there was no evidence that the trees or boulders obstructed any legitimate use of the easement, we must conclude that the trial court erred in allowing the Appellees to remove the trees and boulders. However, at oral

---

[7](...continued)
court did award the Shells a Declaratory Judgment preventing Mr. Cole from further interfering with their use of the easement, the trial court declined to award the Shells damages for any alleged interference. The Shells do not take issue with that ruling on appeal.

argument on this appeal, both parties agreed that the trees and boulders had since been removed from the easement. Although Ms. Cole sought a stay on execution of the judgment, she agreed to dismiss her request in the trial court. Further, nothing in the record indicates that Ms. Cole ever sought a stay on the judgment in this Court. Ms. Cole does not seek damages from the improper removal, nor does she seek a return of her property that was removed from the easement. A case will generally be considered moot when the prevailing party will be provided no meaningful relief from judgment in its favor. Further, to avoid being dismissed as moot, cases or issues must be justiciable not only when a case is first filed, but must remain justiciable throughout the entire course of litigation, including appeal. *County of Shelby v. McWherter*, 936 S.W.2d 923, 115 Ed. Law Rep. 553 (Tenn. Ct. App. 1996); *see also Lufkin v. Board of Professional Responsibility of the Supreme Court*, 336 S.W.3d 223 (Tenn. 2011) (citing *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 204 (Tenn. 2009) ("If a case no longer serves as a means to provide some sort of judicial relief to the prevailing party it will be considered moot."). In this case, without a request for damages or specific performance regarding the return of the removed property, this Court can offer Ms. Cole no meaningful relief. Thus, this issue is moot.

## Conclusion

The judgment of the Rutherford County Circuit Court is reversed. This cause is remanded to the trial court for further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellees John Shell, Connie Shell, and Rick Shell, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE